In re FRANKLIN NATIONAL BANK SECURITIES LITIGATION.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity and as the Receiver of Franklin National Bank, et al., Plaintiff,

v.

ERNST & ERNST, et al., Defendant.

76 Civ. 2339.

United States District Court, E. D. New York.

Dec. 7, 1981.

Cornish Hitchcock, Public Citizen Litigation Group, Washington, D. C., Lawrence Sandak, Winer, Neuberger & Sive, New York City, for plaintiffs-intervenors.

Daniel F. Kolb and Paul R. Koepff, Davis Polk & Wardwell, New York City, for defendant Ernst & Whinney.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

### I.  Procedural History

In October 1974, Franklin National Bank ("FNB"), one of the largest banking institutions in the United States, was declared insolvent and the Federal Deposit Insurance Corp. ("FDIC") was appointed the bank's receiver. *See In re Franklin National Bank*, 381 F.Supp. 1390 (E.D.N.Y.1974). Five years later after scores of lawyers had collected millions of documents, more than a hundred thousand pages of depositions, and more than ten million dollars in legal fees, what promised to be a bitterly contested trial lasting at least six months began. *See generally Huntington Towers Ltd. v. Franklin National Bank & Federal Deposit Insurance Corp.*, 559 F.2d 863 (2d Cir. 1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978); *In re Franklin National Bank Securities Litigation*, 532 F.2d 842 (2d Cir. 1976); *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 577 (E.D. N.Y.1979); *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 210 (E.D. N.Y.1979); *In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723 (E.D. N.Y.1978), *supplemental opinion*, 449

F.Supp. 574 (E.D.N.Y.1978); *In re Franklin National Bank Securities Litigation,* 73 F.R.D. 25 (E.D.N.Y.1976), *remanded,* 574 F.2d 662 (2d Cir. 1978), *clarified,* 599 F.2d 1109 (2d Cir. 1979); *Federal Deposit Insurance Corp. v. National Surety Corp.,* 425 F.Supp. 200 (E.D.N.Y.1977); *In re Franklin National Bank,* 381 F.Supp. 1390 (E.D.N.Y. 1974). Former directors and officers, classes of shareholders, governmental agencies and accountants were the adversaries. Had the trial continued, many millions of dollars more would have been expended in legal fees, a trial part would have been heavily engaged for a long period, more appeals were inevitable and jurors would have been inconvenienced.

As a result of intensive negotiation the case was settled just as the trial got underway. This result could not have been achieved without an agreement that the amounts paid would not be revealed. Secrecy was deemed vital by one of the parties because unrelated legal disputes might have been affected had the settlement pattern in the *Franklin* case become public knowledge. Accordingly, as an integral part of a complex agreement, paragraph 8 provided that:

> The parties and their counsel in this proceeding and the other actions consolidated in MDL # 196 are not to disclose the terms of the settlement herein and all settlement documents are to be sealed and kept confidential by the Court, provided, however, that Ernst & Ernst at its sole option (upon due notice to the Federal Deposit Insurance Corporation ("FDIC"), the Trustee and the Court) may disclose the terms, in which event the FDIC and the Trustee may also disclose the terms. This paragraph is entered into for the convenience of the parties, and at the specific request of the parties, the Court shall retain jurisdiction with respect to this paragraph.

This paragraph was accompanied by a court order of confidentiality.

Two years after this complex multidistrict litigation was terminated, John Brown and a Public Interest Research Group ("PIRG") seek to reopen the case, intervene, set aside the order of confidentiality and discover who paid whom what. John Brown is a staff attorney with PIRG, a nonprofit consumer organization which "has long been interested in banking issues which affect consumers." Affidavit of John Brown (July 21, 1981) at 1. Brown has represented PIRG on banking issues before federal agencies and in testimony before congressional committees.

In December, 1980, Brown and PIRG filed an information request with FDIC seeking a copy of the settlement agreement pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976). The FDIC denied the request on the ground that the protective order prohibited disclosure. Brown and PIRG took an administrative appeal from this decision, but the decision not to disclose the information was affirmed. The FDIC further declined to petition this court, as movants had requested it to do, to modify the order. Movants now properly seek relief in the court that issued the protective order blocking access to the information sought. `GTE Sylvania v. Consumers Union,* 445 U.S. 375, 378, 100 S.Ct. 1194, 1197, 63 L.Ed.2d 467 (1980); *Legal Times of Washington, Inc. v. FDIC,* No. 80–1282 (D.D.C. Sept. 3, 1980).

### II. Intervention

■ Intervention as of right under rule 24(a) is not warranted because "the applicant [is unable to show that it] claims an interest relating to the property or transaction which is the subject of the action ..." Fed.R.Civ.P. 24(a)(2). *See Rios v. Enterprise Association Steamfitter Local 638,* 520 F.2d 352, 356 (2d Cir. 1975) (in Title VII action by black workers consent decree ordered affirmative relief of admission to the union; white union members who sought to intervene after judgment had no interest in the property or transaction forming the subject matter of the action, which was the union's duty "not to discriminate against nonwhites in the admission of new members"); *United States v. Blue Chip Stamps Co.,* 272 F.Supp. 432 (C.D.Cal.1967), *aff'd per curiam sub nom. Thrifty Shoppers Scrip Co. v.*

*United States*, 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 781 (1968). Applicants have no "significantly protectable interest" in the main litigation sufficient to support intervention as of right. *See Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971).

Permissive intervention under rule 24(b) is warranted. Rule 24(b) authorizes the court in its discretion to permit intervention "when an applicant's claim . . . and the main action have a question of law or fact in common." While stretching the concept of mutuality somewhat, what is common to the intervenor and the original litigants is the validity of a secret element in the settlement agreement. The right of public access to agency information secured by the FOIA and the intervenors' position as representatives of the public presents a claim founded upon an important interest sufficient to raise a common question and to support permissive intervention. The original parties' claim to secrecy is the obverse of the intervenors' claim of the right to know.

Inasmuch as an "application for the modification of an existing protective order normally should be made to the judge who is in control of the private litigation in which it is still pending," *United States v. GAF Corp.*, 596 F.2d 10, 16 (2d Cir. 1979), intervention under rule 24(b)(2) is desirable. *See Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 292–93 (2d Cir. 1979). Permissive intervention will afford intervenors a forum, otherwise unavailable, so that the court can carry out the role Congress envisioned for it as "the necessary protector of the public's right to know." *GTE Sylvania v. Consumers Union*, 445 U.S. 375, 387, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980).

Although this petition is brought nearly two years after entry of the protective order, the delay is excused by the fact that *Sylvania* only recently foreclosed movants' FOIA remedy. Also weighing in favor of liberal interpretation of the intervention rule is the solicitude due the FOIA's "inten[tion] to establish a general philosophy of full agency disclosure." *GTE Sylva-*

*nia v. Consumers Union*, 445 U.S. 375, 385, 100 S.Ct. 1194, 1200, 63 L.Ed.2d 467 (1980) (quoting S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965)).

### III. Modification of Protective Order

Intervenors characterize their argument in favor of modifying the protective order as turning on a "simple principle: a court's order to a federal agency to withhold agency records from the public is limited to the reasons for withholding permitted in the FOIA." Post-Argument Memorandum of John Brown and PIRG at 2. There is no authority for this proposition.

We are not dealing with an agency promise but with a court order—albeit an order entered at the request of the parties, including an agency. The statutory goal is not necessarily defeated when an agency obtains protection from a court which is broader than the FOIA exemptions. The Act was intended to circumscribe the discretion of agencies rather than that of courts. In the context of this case it cannot be said that the FDIC manipulated this court in order to avoid the agency's obligations under the FOIA. Rather, the court properly issued a not unusual protective order in aid of its own jurisdiction.

Courts have, of course, lifted or modified their sealing orders. *See, e.g., Crystal Growers Corp. v. Dobbins*, 616 F.2d 458 (10th Cir. 1980) (records ordered unsealed and then resealed for five years); *Olympic Refining Co. v. Carter*, 332 F.2d 260 (9th Cir.), *cert. denied*, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964) (records ordered unsealed subject to reasonable restrictions). What these cases illustrate is that the court, in exercising its discretionary power to control and seal records, should "weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." *Crystal Growers, supra*, at 461. *Cf. Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

In issuing the protective order intervenors now challenge, this court weighed the

public interests. The intervenors have not now made a substantial case for a new balance. This was a complex multi-district case involving numerous defendants and numerous plaintiffs. If an agreement could not be concluded, the trial would have lasted at least six months, necessitating enormous expenditures of both litigant and judicial resources. In addition to extensive costs already borne by the government and FNB's creditors prior to the trial, litigation expenses likely would have consumed the balance of insurance protecting the individual defendants and providing some security for collection of the ultimate judgment.

All parties were cognizant of the fact that a critical factor in averting these untoward results was the element of confidentiality—an element insisted upon not by FDIC, but by a defendant, Ernst & Ernst. Without secrecy of the terms, a settlement would not have been consummated.

At the time its sealing order was entered, the court considered the historical importance of the FNB failure and the public interest in disclosure against the private and public interests that would be furthered by a resolution of the matter without further litigation. The latter was more compelling. Secrecy of settlement terms under such conditions is a well-established American litigation practice.

The balance then struck has not now changed. The intervenors have placed no substantial new weight on the scale. Lapse of time also works against intervenors' position. The settlement agreement resulted in the payment of substantial amounts of money and induced substantial changes of position by many parties in reliance on the condition of secrecy. For the court to induce such acts and then to decline to support the parties in their reliance would work an injustice on these litigants and make future settlements predicated upon confidentiality less likely.

This case generated considerable public interest and received extensive coverage in the media. Settlement of the class action aspect of the case was widely publicized and was concluded only after a public hearing on that settlement. In addition, the imminent settlement of the action between FDIC and Ernst & Ernst, albeit not the terms, was reported in the press and there was public knowledge that the settlement agreement would be sealed. The court at that time would have entertained the views of a public interest group such as intervenors on the advisability of its protective order.

█ We recognize, of course, that an historian, legal scholar or guardian of the public interest may not be aware of the significance of the event until long after the record has been sealed. While this is certainly a relevant factor in deciding whether to reopen, it cannot be a critical one. Here its weight is insufficient to warrant unsealing, particularly in light of the fact that the intervenor has had a longstanding interest in this area.

█ We note that a practice of early intervention motions by public interest groups before a settlement is consummated might be useful in future cases of great public importance. At this point, the strong public policy favoring settlement of disputes, particularly in complicated cases, and the importance of the stability of judgments and settlements, argue strongly against modification of the order.

## IV. Conclusion

The decision at the time of settlement to order confidentiality was by no means inadvertent. It was made after consideration not only of the interest of the parties then before the court, but also of the interest of the public in the prompt disposition of the case as well as in knowledge of the terms of settlement. The intervenors' motion to modify the secrecy order is denied.

So ordered.