**In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.**

**MDL No. 381.**

United States District Court,
E.D. New York.

Jan. 18, 1983.

\* Of the U.S. Court of Appeals for the Second

See also, D.C., 96 F.R.D. 578.

PRETRIAL ORDER NO. 43

GEORGE C. PRATT,* Circuit Judge.

In this multidistrict litigation, plaintiffs, Vietnam war veterans and members of

Circuit, sitting by designation.

their families, seek to recover for injuries allegedly suffered as a result of the veterans' exposure to various herbicides, which defendants manufactured and supplied to the government for use in the Vietnam war. On April 29, 1982, the court appointed Sol Schreiber as special master pursuant to FRCP 53, to supervise all pretrial discovery for the Phase I trial on the government contract defense, scheduled to commence in June 1983. Pretrial Order No. 35.

On July 29, 1982, CBS, Inc. (CBS) filed a motion seeking access to nonclassified and nonconfidential documents produced by the defendants and/or the United States government during discovery. The court referred the motion to the special master for consideration and a recommendation. On October 14, 1982, the special master signed a protective order incorporating procedures for the dissemination of the documents at issue. Simultaneously, he submitted a memorandum to the court in support of the protective order. CBS appeals from that portion of the order which prohibits disclosure of nonconfidential and nonclassified documents produced during discovery. No party to the litigation appeals from the order. Defendant Dow has submitted a memorandum in support of the order.

The protective order, which is reproduced in its entirety in the appendix, provides that only "designated persons" (parties, their attorneys, expert witnesses, witnesses to depositions) shall have unrestricted access to the discovery material at issue. If a designated person wishes to disseminate such material to a person who is not so designated, he "shall make an application to the special master for removal of this protective order as to that 'document' or category of 'documents'". The party seeking to affirm the protective order is given five days to respond to the application to disseminate, and has the burden of showing, pursuant to FRCP 26(c), that good cause exists for continuation of the order with respect to the documents in question. Those seeking to disseminate are given a further opportunity to respond in opposition.

The order provides that the special master will examine the documents to determine whether good cause exists to continue the protective order. The last two paragraphs of the order provide:

12. Counsel are not barred from discussing in general terms what their claims are and what they believe they will be able to prove, nor are they limited from making public any material obtained independently of the discovery process.

13. Nothing in this Order shall prohibit the press from exploring all avenues in a search to discover information pertaining to the claims in this litigation, nor from publishing any information it learns about the case.

In his memorandum accompanying the protective order, the special master indicated that he based his determination that good cause exists for the order on the "complexity of this litigation, the emotionalism surrounding the issues, the number of documents yet to be reviewed and the desirability of moving discovery expeditiously in order to meet the June 1983 trial date". He discussed in detail the first amendment concerns raised by CBS and concluded that his order, while serving the ends of expediting discovery and protecting the parties' right to a fair trial, does not unduly restrain first amendment rights.

CBS, who is not a party to this action, attacks the order on two grounds: (1) that it violates the first amendment right of the public and CBS to access to the materials obtained in discovery; and (2) that it violates the parties' first amendment right to disseminate those materials freely.

*Right of Access.*

CBS argues that the special master's protective order denies CBS access to potential sources of information and thus violates its first amendment rights and those of the public. If there is a right of access to discovery materials, CBS has standing to assert that right because an order limiting it would impair "its ability to gather the news concerning the trial". *CBS, Inc. v. Young,* 522 F.2d 234, 238 (CA6 1975); *see In*

*re Application of National Broadcasting Co.,* 635 F.2d 945 (CA2 1980).

■ However, the court concludes that there is no independent right of access by non-parties to materials produced in discovery and not made part of the public record. CBS does not seek access to filed documents, court exhibits, or trial proceedings, all of which are public records and to which the press generally has unrestricted access, *Globe Newspaper Co. v. Superior Court, Norfolk County,* —— U.S. ——, ——, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982) (first amendment right of access to criminal trials); *In re Application of National Broadcasting Co., Inc., supra,* 635 F.2d at 949–51 (common-law right of access to inspect and copy judicial records, court exhibits and trial proceedings). What is at issue here is access by a non-party to documents obtained by a party pursuant to discovery requests but not filed with the court.

■ The broad discovery encouraged by the Federal Rules of Civil Procedure of necessity results in production of many documents and other materials which will not be used at trial. As with the documents and information at issue here, discovery material does not necessarily become part of the public record. *See, e.g., Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.,* 529 F.Supp. 866, 897 (E.D.Pa.1981). The same factors that support a right of access to judicial records and other public documents—the public's right to know and the public interest in insuring that judicial proceedings are conducted fairly, to name but two—simply are not implicated where the materials were obtained by a party through discovery but have not yet been filed with the court. *See Times News, Ltd. (Gr. Brit.) v. McDonnell Douglas Corp.,* 387 F.Supp. 189, 194–96 (C.D.Cal.1974). In short, CBS has no right of access to the documents it seeks here, and its motion for access on this ground must be denied.

The court notes that the protective order does not in any way prevent CBS from reporting on the Agent Orange litigation, or from obtaining the same material from other, independent sources. In addition,

while it is not necessary to address the government's argument that CBS should exhaust the possibility of obtaining the requested material under the Freedom of Information Act, 5 U.S.C. §§ 552 *et seq.,* it should be noted that CBS may well be able to obtain much of the sought-after material through that channel. Thus, the fact that CBS has no independent right of access to documents produced in discovery does not mean that it has no alternative means of obtaining and reporting on this information.

*Right to Disseminate.*

CBS also argues that it has a first amendment right of access to documents produced in discovery which "follows inextricably from the right of counsel and the litigants themselves to freely disseminate documents and information received in discovery * * *", CBS Memo on Appeal at 8, and that it is asserting the parties' rights of dissemination, which CBS claims are infringed by the special master's order.

■ While several cases have addressed the first amendment interests at stake when protective orders place limits on dissemination of materials obtained during the discovery process, *In re San Juan Star Co.,* 662 F.2d 108 (CA1 1981); *In re Halkin,* 598 F.2d 176 (D.C.Cir.1979); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 529 F.Supp. 866 (E.D.Pa.1981), they have not addressed the issue of a non-party's standing to assert a party's right to disseminate where the party itself does not assert the right. Neither plaintiffs nor defendants have appealed from the special master's protective order, and the court concludes that CBS does not have standing to assert the parties' rights where they have not chosen to assert them at this time.

Attached to CBS's memorandum appealing from the special master's order is a letter from lead counsel for plaintiffs to the special master requesting that all nonclassified and nonconfidential documents be released from the protective order. By letter to the court dated October 7, 1982, CBS indicates that it attached the letter to show

that plaintiffs wish to disseminate the documents at issue and that therefore CBS may assert its right to access to those documents plaintiffs wish to disseminate.

While it may be correct that plaintiffs wish to disseminate some or all of the documents which have been produced in discovery, that issue is not before the court at this time. Counsel for plaintiffs submitted the letter to the special master at a meeting on September 16, 1982, and at that time the special master, after hearing the views of counsel for plaintiffs, defendant Dow, and the government, indicated that he would hold the request in abeyance pending the court's ruling on CBS's appeal of his protective order. R. at 1836, 1841. Consequently, plaintiff's request to disseminate is not before the court at this time.

The court does note that the special master's protective order is particularly appropriate and suited to the circumstances of this litigation. While CBS argues that ."mere" case management is not sufficient justification for a protective order, the court must emphasize that this case may never be able to reach trial if there is not full cooperation on the part of all parties concerned—plaintiffs, defendants, and the government. The subject matter of this lawsuit of necessity involves discovery of sensitive and confidential documents, both government and corporate. Under the liberal discovery encouraged by the federal rules, the parties have explored broadly the records of government agencies and deposed numerous agencies and witnesses who might be less cooperative if the material and testimony they produced, no matter how irrelevant, became subject immediately to the intensive media scrutiny this litigation inevitably attracts. The interest of preserving the efficient and effective functioning of the discovery process weighs substantially in favor of a protective order, *In re Halkin, supra,* 598 F.2d at 192, and there is no question that this interest would be significantly impaired were there no protective order in this case.

The special master's protective order shifts the very slight burden of going forward to the proponents of dissemination. Those wishing to disseminate merely need to indicate which documents they wish to disseminate, and the burden is then upon those opposing dissemination to show "good cause" pursuant to FRCP 26(c) why the protective order should be continued. It is hoped that this procedure will result in the court's having to review only those particular documents a party wishes to disseminate, rather than having to review every document that some party wants covered by a protective order.. Of course, this procedure could be frustrated by a blanket request for dissemination, but a party making that request will have to face as a consequence .the inevitable delay which would result from the court's having to review literally thousands of documents. It is presumed that the parties will act in good faith and will tailor their requests for dissemination appropriately.

In conclusion, CBS's application for access to nonclassified and nonconfidential documents produced during discovery is denied. The court approves and adopts the special master's protective order of October 14, 1982.

SO ORDERED.

### APPENDIX

### SPECIAL MASTER'S PROTECTIVE ORDER

1. This protective order seeks to limit disclosure of documents and the contents of depositions which are produced pursuant to Rule 26 (hereinafter "discovery material") during the pretrial stages of this case.

2. In light of the complexity of this case, the number of documents yet to be discovered and depositions yet to be taken, the emotionalism surrounding the issues, the imminence of the June 1983 trial date which requires that discovery be conducted expeditiously, and the fact that many of the documents and depositions may contain highly sensitive material, this Order sets forth a procedure for limited pretrial disclosure of such "discovery material" to persons not designated as hereinafter described.

3. All documents and depositions produced to date and to be produced hereafter pursuant to discovery requests in the course of the pretrial stage of these proceedings, which are not otherwise protected from disclosure pursuant to a protective order previously entered herein, are and shall be designated as protected within the meaning of Rule 26(c) of the Fed.R.Civ.P., and said documents and depositions and the contents or substance thereof, shall not be disseminated, made available for inspection or copying, paraphrased or otherwise disclosed, to any person other than a "designated person" (defined in paragraph 5 hereof) except as permitted herein.

4. All "discovery material," if filed with the Court, shall be filed under seal.

5. Only the following "designated persons" shall have unrestricted access to "discovery material":

(a) Partners, associates, paralegals, law clerks and clerical personnel, if any, of the counsel representing parties to this action;

(b) The parties to this action, except that with respect to the defendants and third-party defendant United States of America, a reasonable number of employees of each;

(c) Persons retained by counsel for the parties to this action to assist in preparation for trial or to serve as expert witnesses in this litigation; and

(d) A witness to a deposition, including any party or any employee of the party, will constitute a designated person provided that:

(i) All persons in attendance at the deposition are designated persons, except for the court reporter; and

(ii) The witness is advised on the record or in writing of the existence and contents of this Order and the witness agrees on the record or in writing to be bound by its terms, or the Court, after motion on notice to all parties, orders such compliance.

6. No person described in paragraph 5(a), (b) or (c) hereof shall be given access to any "discovery material" until each such person has executed an undertaking in the form annexed hereto as Exhibit "A". Clerical help employed by counsel to any party herein need not execute any such undertaking, but need only be advised of the contents of this Order and agree to be bound thereby. Every person who executes an undertaking shall provide a copy thereof to counsel for each defendant and shall file a copy thereof with the Clerk of the Court.

7. If any person except the court reporter who is present at a deposition at which the contents of "discovery material" are discussed has not executed an undertaking as described in paragraph 6 hereof, such person shall state on the record that he agrees to be bound by the terms of this Order.

8. A "designated person" who desires to disseminate, to a person not designated as herein described, a particular "document" or category of "documents" which has been produced to that "designated person" pursuant to Rule 26 shall make an application to the Special Master for removal of this protective order as to that "document" or category of "documents."

9. Within 5 days, those who seek to affirm the protective order's applicability to the "documents" or categories of "documents" sought to be disseminated to person(s) not designated as herein described, will have the burden of proof to respond to such application, setting forth in such response the reasons why good cause exists for continuation of this protective order. Thereafter, those seeking to disseminate the said "document" or category of "documents" will have an opportunity to respond in opposition to the order.

10. The Special Master shall then examine the "document" or category of "documents" *in camera* to determine whether claim of good cause is supported by the contents of the documents.

11. This Order in no respect supercedes, in whole or in part, the protective order regarding production of confidential documents by defendants dated February 6, 1981.

12. Counsel are not barred from discussing in general terms what their claims are and what they believe they will be able to prove, nor are they limited from making public any material obtained independently of the discovery process.

13. Nothing in this Order shall prohibit the press from exploring all avenues in a search to discover information pertaining to the claims in this litigation, nor from publishing any information it learns about the case.

Dated: New York, New York

October 14, 1982

SO ORDERED

/s/ Sol Schreiber

Sol Schreiber

Special Master

EXHIBIT "A"

AGREEMENT CONCERNING DOCUMENTS SUBJECT TO PROTECTIVE ORDER ENTERED IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT ON OCTOBER 14, 1982

The undersigned hereby acknowledges that he has read the Protective Order, dated October 14, 1982, and entered in the United States District Court for the Eastern District of New York on _____, 1982, in the action entitled *In Re Agent Orange Product Liability Litigation*, MDL No. 381 (All Cases) (GCP), understands the terms hereof and agrees to be bound by such terms as if he were signatory thereto.

————————————
(Date)

————————————
Signature

————————————
Business Address