In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

MDL No. 381.

United States District Court, E.D. New York.

June 21, 1983.

Victor J. Yannacone, Jr., Yannacone & Associates, Patchogue, N.Y., for plaintiffs.

Leonard L. Rivkin, Rivkin, Leff, Sherman & Ridler, Garden City, N.Y., for defendant The Dow Chemical Corp.

Morton B. Silberman, Clark, Gagliardi & Miller, White Plains, N.Y., for defendant T.H. Agriculture & Nutrition Company, Inc.

Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, New York City, for Diamond Shamrock.

Philip D. Pakula, Townley & Updike, New York City, for defendant Monsanto.

William Krohley, Kelley Drye & Warren, New York City, for defendant Hercules, Inc.

Thomas Beck, Arthur, Dry & Kalish, New York City, for defendant Uniroyal.

Howard Lester, Lester, Schwab, Katz & Dwyer, New York City, for defendant Hoffman-Taft.

John M. Fitzpatrick, Dilwarth, Paxson, Kalish & Levy, Philadelphia, Pa., for defendant Hooker Plastics & Chemicals Corp.

David R. Gross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, Newark, N.J., for defendant Thompson Chemical Co.

Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., for defendant Riverdale Chemical Co. .

Arvin Maskin and Gretchen Leah Witt, Civil Division, Department of Justice, Washington, D.C., for the United States of America.

Pretrial Order No. 54

GEORGE C. PRATT, Circuit Judge:*

On May 12, 1983 the court requested special master Sol Schreiber to consider with counsel and make recommendations to the court with respect to a number of pretrial matters. On one of those matters the special master has recommended in his report dated June 21, 1983 that all the material submitted with and referred to in the papers submitted on the summary judgment motions made by seven of the defendants and decided by the court on May 12, 1983 be unsealed. That report is attached as an appendix to this order.

The court has carefully reviewed the special master's thoughtful analysis and recom-

* Of the U.S. Court of Appeals for the Second Circuit, sitting by designation.

mendation and has carefully considered the defendants' objections thereto. The recommendation is hereby accepted and adopted, and the clerk is directed to unseal on July 5, 1983 all of the materials filed in connection with the summary judgment motions referred to above. This order extends to the summary judgment papers only. It is not intended to modify the earlier protective order with respect to any documents or depositions or exhibits, or portions thereof, that were not filed and sealed as part of the summary judgment motions.

SO ORDERED.

## SPECIAL MASTER'S RECOMMENDATION

### RE: REEXAMINATION OF CONFIDENTIALITY ORDER

SOL SCHREIBER, Special Master.

This multi-district litigation involves thousands of Vietnam veterans who are seeking damages from nine chemical companies for injuries allegedly incurred as a result of their exposure to phenoxyherbicides, notably Agent Orange, which were used by the military during the Vietnam conflict. On May 12, 1983, in ruling on the motions for summary judgment brought by seven of the nine defendants, Judge Pratt dismissed four defendants and directed that the assigned Special Master consider whether some of the restrictions on discovery set forth in the Special Master's recommended order of October 14, 1982 should be lifted. Before examining the matter, a brief review of the events leading up to the issuance of the order and subsequent developments is warranted.

### I. *Background*

On April 29, 1982, Judge Pratt appointed me as Special Master in this case to oversee discovery of the issues leading to the trial of the government contract defense, which at that time was scheduled to be held in June, 1983. At one of the first hearings held before me, I made an oral ruling barring public disclosure of documents exchanged and depositions taken in this case.

I also indicated to the parties that this was a preliminary ruling.

In July, 1982, counsel for CBS, Inc. ("CBS") filed with the Court a written motion for access to non-classified and non-confidential documents which had been produced during discovery. This motion was referred to me for recommendation by Judge Pratt. On September 2, 1982, after hearing extensive argument from counsel for the parties, the government and CBS, I dictated into the record a recommended order prohibiting the parties to this litigation from wholesale disclosure to non-parties of material produced in discovery. This oral opinion was then set forth in a more detailed recommendation, with a supporting memorandum of law, which also outlined the procedures to be used for the dissemination of particular documents. See Special Master's Memorandum Opinion and Protective Order dated October 14, 1982. This order was subsequently appealed by CBS. On January 18, 1983, Judge Pratt approved the Special Master's Recommendation in its entirety, noting "[t]hat the Special Master's protective order is particularly appropriate and suited to the circumstances of this litigation". See 96 F.R.D. 582, 585 (E.D.N.Y. 1983). The October 14, 1982 protective order was prompted in large measure by the need for expediting discovery and the brief time remaining before the trial of the first issue. Depositions had not yet begun and there were sharp disputes between defendants and government counsel with regard to documentary production.

An earlier protective order entered by Judge Pratt on February 6, 1981 established procedures for the production of defendants' confidential documents and provided that a defendant could elect to adopt one or two procedures for the production of those documents it deemed to contain confidential developmental, business, research or commercial information.

The October, 1982 order, by contrast, placed a blanket of confidentiality over *all* documents whether produced by the plaintiffs, defendants or the government, pursuant to the discovery rules in this case, re-

gardless of their content. At the time it was issued, trial of the government contract defense, the sole issue for decision in the Phase I trial, was scheduled for June 27, 1983.

Hundreds of thousands, if not millions, of documents which were claimed to be necessary for preparation of the government contract defense had not yet been produced from a vast array of government agencies. The necessity for encouraging cooperation among the parties and the government and the desirability of implementing an efficient and expeditious discovery program constituted, in my judgment, sufficient cause for the issuance of the blanket protective order in October, 1982.

There exists a natural tension between the First Amendment rights of parties and the public's right to know, and the need for some protection to guarantee the right to a fair trial in emotional and highly volatile litigation. In the "Agent Orange" case, both sides have engaged in extensive public comments concerning matters most favorable to their positions. While certain comments may have been excessive, on the whole the parties and counsel have not, in my judgment, poisoned the air with respect to the sensitive issues inherent in this dispute. In addition, leading newspapers, magazines, trade and industry publications have published reviews of the proceedings to date.

Mindful that a blanket protective order raises First Amendment concerns, See *In re Halkin,* 598 F.2d 176, 190 (D.C.Cir.1979); *cf. In re San Juan Star Co.,* 662 F.2d 108, 114 (1st Cir.1981), the October protective order seeks to balance the needs of the parties, in this case to complete discovery of Phase I of a complex, highly charged case, against the desirability of public access to the fruits of that discovery. CBS' argument that the public has a right of access to discovery materials not made part of the public court record was rejected. *See, e.g., Zenith Radio Corp. v. Matsushita Elec. Industrial Co., Ltd.,* 529 F.Supp. 866, 897 n. 55 (E.D.Pa. 1981); *Times News Ltd., (Gr. Brit.) v. McDonnell Douglas Corp.,* 387 F.Supp. 189, 196 (C.D.Ca.1974); *Wilk v. American Medical Association,* 635 F.2d 1295, 1299 n. 7 (7th Cir.1980). The order does not prohibit the press in any way from reporting on this case, nor does it infringe upon any party's right to speak about the matters in dispute. Rather, the order sets forth a simple procedure for dissemination of any documents a party wishes to make public. See 96 F.R.D. at 585–87. The net effect of these procedures is to shift the burden of going forward to the party seeking dissemination of specific documents; the ultimate burden rests on the party opposing dissemination to show good cause why the protective order should continue. See *id.*

In his May 12, 1983 ruling on the motions for summary judgment, Judge Pratt stated that, in addition to continuing discovery on the government contract defense, the parties would also prepare for trial issues encompassing the question of general causation. In light of this, the trial which had been scheduled for June 27, 1983 was adjourned. Judge Pratt's ruling also reaffirmed the authority of the Special Master to continue supervising discovery in this case and to "recommend an appropriate timetable for the remaining discovery, any further motions, preparation of a pretrial order and trial". See Pretrial Order No. 51, dated May 20, 1983, at 40. In addition, Judge Pratt specifically directed the Special Master to consider whether some of the restrictions on public disclosure of discovery materials should be lifted.

At the first hearing after Judge Pratt's decision on the summary judgment motions, I suggested to counsel that the question of the possible lifting of the October protective order really presents three issues. The first is the lifting of the protective order as it relates to the summary judgment motion papers and exhibits attached thereto submitted by both sides; the second—whether depositions already taken and those which will be taken as discovery on the issues of the government contract defense and general causation proceeds should be made public; and third, the general status of other documents produced by the parties and the

government in the litigation. This recommendation addresses the issue of whether a need exists for continuation of the restrictions on public disclosure of documents and other papers submitted in support of the various parties' positions on the summary judgment motions. Recommendations examining the second and third issues will follow, shortly.

On May 16, 1983 and again on May 23rd, counsel for the plaintiffs and defendants argued before me the question of lifting the October protective order as it relates to the summary judgment motion papers. Plaintiffs' counsel has requested the lifting of the entire protective order. In turn, counsel for defendant Dow Chemical Company, joined by other defendants' counsel objected to the lifting of any part of the order. In the view of the defendants' counsel nothing has changed in this case since the protective order was entered on October 14, 1982; therefore, all the documents produced through discovery thus far should remain under the order for the same reasons on the basis of which the order was originally entered. Dow's counsel further suggested that publicity attending the unsealing of any of these documents would damage its chances of receiving a fair trial. See transcript of May 16, 1983 hearing at 5176, 5179 and Transcript of May 23, 1983 Hearing at 5183 (comments by counsel for defendant Monsanto).

With Judge Pratt's decision on the summary judgment motions, this case has entered a new phase. Judge Pratt, in reexamining the need for a separate trial on the government contract defense, held that the issue of the relative extents of knowledge of the government and the defendants on hazards of Agent Orange and the issues presented by general causation questions should be tried together in one trial; the trial scheduled to take place on June 27, 1983 was adjourned. Further, discovery on the government contract defense is nearing completion. Hugh numbers of documents have been produced by the government and the defendants; more than 125 depositions have been held. The Special Master has reviewed hundreds of documents, highly sensitive to the national security, which the government had argued were not relevant to the trial. The exigencies of commencing discovery and preparing an as then not well-focused affirmative defense for trial in the relatively short period of eight months from the issuance of the protective order, simply do not exist today. The order has served well to expedite discovery; the question now is whether in view of the many changes in the posture of this case, and in particular, the status of the documents submitted with the summary judgment motions and considered by the court, a need to restrict public disclosure continues to exist.

## II. *Discussion*

■ It is undisputed that under the common law the public has a right of access to inspect and copy judicial records. *In re Application of National Broadcasting Company v. United States*, 635 F.2d 945, 949 (2d Cir.1980). *See United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C.Cir.1976), *rev'd. on other grounds sub nom. Nixon v. Warner Communications*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). The right of inspection is fundamental to a democratic form of government, serving as a check on possible abuses by the court system, and helping to produce an "informed and enlightened public opinion". *United States v. Mitchell*, 551 F.2d at 1257–58, quoting *Grosjean v. American Press Company*, 297 U.S. 233, 247, 56 S.Ct. 444, 448, 80 L.Ed. 660 (1936).

What is less clear than the public right to inspect and copy judicial records, however, is the standard to be used in determining what constitutes a judicial record. *See Zenith Radio v. Matsushita Electric Industrial Co., Inc.*, 529 F.Supp. 866, 897–98 (E.D.Pa. 1981). At what point do various documents, memoranda and other material developed during the pretrial stage of litigation become part of the judicial record such that the public right of access applies to it?

■ The October protective order was based on the premise that the public right of access to court records and proceedings does not usually include access to discovery

material. See Special Master's Memorandum Opinion and Protective Order, dated October 14, 1982. *See also, Times News, Ltd. (Gr. Brit.) v. McDonnell Douglas Corp.,* 387 F.Supp. 189 (C.D.Ca.1974). Discovery material, merely because it is produced pursuant to the judicial process, is not necessarily part of the public record. *See e.g., Zenith Radio Corp. v. Matsushita,* 529 F.Supp. at 897; *Wilk v. American Medical Association,* 635 F.2d 1295, 1299 n. 7 (7th Cir.1980). The court in *Wilk* noted that "unless and until introduced into evidence, the raw fruits of discovery are not in the possession of the court", and therefore, the common law right of public access does not attach. *Id.*

■ While documents produced through the discovery process and not yet submitted to the court are not necessarily part of the public record, *Times News. Ltd. (Gr. Brit.) v. McDonnell Douglas Corp.,* 387 F.Supp. 189 (C.D.Ca.1974), documents which, like those attached to the summary judgment motions in this case, are submitted to the court for its consideration must, of necessity, lose their status of being "raw fruits of discovery". *See Zenith Radio Corp. v. Matsushita,* 529 F.Supp. at 901; *Cianci v. New Times Publishing Co.,* 88 F.R.D. 562, 565 (S.D.N.Y.1980). The question at this time then is whether the documents submitted under seal, pursuant to the protective order, to support the parties papers on the summary judgment motions are part of the court record and therefore entitled to the presumption that the public has a right to inspect and copy them.

■ Defendants' counsel argue that the fact that the parties submitted documents to support the summary judgment motion papers should not lead to the lifting of the protective order. According to defendants' counsel, "the presumption in favor of public inspection and access to items entered into evidence at a public session of trial does not apply to the Agent Orange summary judgment papers supplied under seal". See letter dated June 10, 1983 to Special Master Schreiber from Marjorie Mintzer, Esq. In support of this argument counsel quotes

from Judge Newman's decision in *In re Application of National Broadcasting Co.,* 635 F.2d 945 (2d Cir.1980): "If, for justifiable reasons, a particular item were entered into evidence under seal, the presumption [of public right of access] would obviously not apply, because with respect to that item of evidence the session of Court was not public." *Id.* at 952 n. 4. This argument begs the very question before the Special Master at this time; that is, do justifiable reasons for maintaining a seal on these documents exist? In effect, defendants would have the court continue the protective order as it relates to these documents on the basis that the documents were filed under seal. That fact alone, however, does not preclude reconsideration of the order. *See, e.g., Zenith Radio Corp. v. Matsushita,* 529 F.Supp. at 897–98. The mere fact that a document was submitted under seal does not protect it forever from disclosure. As Judge Becker pointed out in *Zenith,* "portions of documents that are read into the record in an open proceeding enter the public domain, without regard to whether the documents were originally filed on the public record, under seal, or were not filed with the clerk". *Id.* at 898.

Nor can the parties here contend that disclosure of these documents would prejudice them because the admissibility of these materials has not been ruled upon. Since the parties submitted these documents to the court and the court has evaluated them in order to reach its decision on the motions, it is difficult to see how the parties would be prejudiced by their release to the public.

In *Zenith Radio Corp. v. Matsushita Elec. Industrial Co., Inc.,* the court considered plaintiffs' motion for wholesale declassification of documents which had been exchanged in discovery under a broad order of confidentiality. See *Zenith Radio Corp. v. Matsushita,* 529 F.Supp. 866 (E.D.Pa.1981). Decision of the motion followed the court's grant of summary judgment in favor of defendants on all of plaintiffs' claims. *Id.* at 876. In deciding which documents to declassify the court separated the various categories of documents to which the right

of access attached in varying degrees: (1) discovery materials (2) documents on which there had been evidentiary rulings (3) material referred to at hearings but which was never read into the record or offered into evidence and (4) records filed under seal that are the ultimate subject of a dispositive ruling. *Id.* at 897–901. The last category consisted of materials which the court relied on in making a ruling and which were discussed in Judge Becker's opinion. *Id.* at 901. Judge Becker held that the presumption of public access to inspect and copy attached to this material, reasoning that the courts have an obligation to explain their decisions and that this material may be critical to evaluating a judge's decision. *Id. See also Cianci v. New Times Publishing Co.,* 88 F.R.D. 562, 565 (S.D.N.Y. 1980). (Where the court held that in light of the parties' use of sealed documents in their arguments relating to defendants' motion to dismiss and reference to sealed deposition testimony by the trial court and the appellate court, the documents had become part of the public record and the press could not be denied access to them. *Id.* at 564–65).

In deciding the summary judgment motions, Judge Pratt "reviewed all of the papers submitted, both in support of and in opposition including counsels' extensive memoranda and attached exhibits". See Pretrial Order No. 51 at 3. Indeed, much, if not all, of the support for the facts recited in Judge Pratt's opinion is found in the exhibits attached to the motion and reply papers. If access rights exist to promote knowledge of and attention to the performance of the courts, then it follows that the exhibits supporting the parties' summary judgment papers ought to be open for public inspection. In his written opinion, Judge Pratt repeatedly refers to material filed under seal. Addressing government knowledge, he discusses in detail the Hoffmann Trip Report, the unclassified portion of which was produced by the government and which was itself the subject of much controversy. Pretrial Order No. 51 at 7. Also, Judge Pratt cites to deposition testimony of several government witnesses, Pretrial Or-

der No. 51 at 8, 10, 11 and to various memoranda produced by the defendants. Pretrial Order No. 51 at 15. As *Cianci* makes clear, documents referred to by the court in its opinions become part of the public record and should be open to the public for inspection and copying. *Cianci v. New Times Publishing Co.,* 88 F.R.D. at 564.

Clearly, then, documents attached to and referred to in the parties' papers on the summary judgment motions are part of the court record and are entitled to the presumption of public access. However, the inquiry cannot end there. While the public has a right of access to judicial records, that right is not absolute. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); *United States v. Mitchell,* 551 F.2d 1252, 1260 (D.C.Cir.1976). The presumption of access may be rebutted by a showing that there are countervailing interests sufficient to outweigh the public interest in access. *Nixon v. Warner Communications, Inc.,* 435 U.S. at 602, 98 S.Ct. at 1314. In exercising its discretionary power to control and seal records, a court should "weigh the interests of the public, which are presumptively paramount, against those advanced by the parties". *In re Franklin National Bank Securities Litigation,* 92 F.R.D. 468, 471 (E.D.N.Y.1981) quoting *Crystal Grower's Corp. v. Dobbins,* 616 F.2d 458 (10th Cir.1980). Where unsealing of documents might reveal material governed by the work product privilege or the contents of communications between an attorney and client might be disclosed, the public interest in protecting those privileges would take precedence over its interest in inspecting and copying court records. *See Crystal Grower's Corp. v. Dobbins,* 616 F.2d 458, 461–62 (10th Cir.1980). Where disclosure of documents would amount to use of the court process for "gratif[ication] of private spite or public scandal", the public interest in its right of access diminishes. *Nixon v. Warner Communications, Inc.,* 465 U.S. at 603, 98 S.Ct. at 1315, quoting *In re Caswell,* 18 R.I. 835, 836, 29 A. 259 (1893). Neither

of these reasons for maintaining confidentiality orders obtains in this case.

■ A third example of a private interest which might outweigh the public interest in access is a litigant's reliance on the protective order. In *In re Franklin National Bank Litigation,* 92 F.R.D. 468 (E.D.N.Y. 1981), a non-profit consumer organization sought to set aside a protective order which sealed all documents concerning the settlement of an action arising out of the collapse of Franklin National Bank. In balancing the interests of the public ("which are presumptively paramount", id. at 471) against the interests of the parties, the court found that the intervenor organization added no new weight to the scale which had tipped in favor of the public and private interests in keeping settlement terms and documents confidential. Further, the court determined that the settlement agreement had induced substantial changes of position by many of the parties, changes which had been made at least in part in reliance on the condition of secrecy. "For the court to induce such acts and then to decline to support the parties would work an injustice on those litigants and make future settlements predicated on confidentiality less likely". *Id.* at 472. The court found that the public policy in favor of settling disputes and the importance of stability of judgments and settlements supported continuation of the confidentiality order. *Id.*

While it is true that the government and the parties to this litigation have produced documents under an order of confidentiality, the policy motivating Judge Weinstein's decision in *In re Franklin National Bank* does not apply here. In Judge Weinstein's case the order of confidentiality served to promote settlement. In this case by contrast, the sealing order was issued to encourage active cooperation between the parties and the government and to expedite discovery. Further undercutting the reliance argument in this case is the fact that the order itself recognized that the need for confidentiality order might evaporate as discovery progressed and fundamental disputes were resolved. In the memorandum accompanying my recommended order, I stated that the entire protective order would be reviewable upon the application of any party or the government at any time after the expiration of 120 days. See Special Master's Memorandum Opinion and Protective Order, dated October 14, 1982.

Yet another and very important private interest which may in some cases override the public's right of access is a litigant's interest in preserving his right to a fair trial. Defendants have argued that disclosure of the documents attached to the summary judgment papers will engender significant pretrial publicity which will hinder their ability to get a fair trial.

It is difficult to believe that unsealing the documents submitted to the court with the summary judgment papers will seriously affect defendants' ability to get a fair trial inasmuch as there has been considerable publicity about this case to date. In addition, as noted by Judge Pratt, much of this material has already found its way into the press. See Pretrial Order No. 51 at 40–41. There must be a substantial probability that the sealing of documents will be effective in protecting against the harm perceived to be posed by disclosure. *United States . v. Brooklier,* 685 F.2d 1162, 1173 (9th Cir. 1982). Here, in view of the almost daily media coverage concerning Agent Orange and dioxin, in support of the respective positions of the parties, it is difficult to see what harm will be worked by disclosure of the documents submitted in the summary judgment proceeding.

The case law demonstrates that the risk to fair trial posed by public access to the court record must be more than speculative. *See United States v. Criden,* 648 F.2d 814, 827 (3d Cir.1981); *See also In re Application of National Broadcasting Company,* 635 F.2d 945, 953 (2d Cir.1980). In *In re Application of National Broadcasting Company,* the second circuit affirmed the district court's order giving the broadcasting media access to copy and televised videotapes entered into evidence in a criminal trial. This issue arose before Judge Pratt in the district court during the trial of the first of

the "Abscam" cases—actions against public officials charged with bribery and related offenses arising out of an FBI "sting" operation. See *United States v. Myers,* 635 F.2d 932 (2d Cir.1980).

Judge Pratt granted the network's request for access to copy and broadcast the tapes while the trial against defendant Michael O. Myers and others was still pending. *In re Application of National Broadcasting Company, Inc.,* 635 F.2d 945, 948. Appeal of the order was expedited, but, by the time it was heard, a guilty verdict had already been entered in the Myers case. *Id.* at 949. However, as the second circuit noted, indictments were still pending against three of the Myers defendants and others not charged in that case on charges arising out of the Abscam operation. *Id.* at 953. In his opinion, Judge Newman made it clear that the fact that the Myers trial had not concluded at the time Judge Pratt granted the network's request did not materially alter the public right of access to court records. (*See id.* at 952–53). As to those who were awaiting trial on other Abscam charges who argued against disclosure of the tapes because "the enhanced exposure and impact of the tapes that [would] occur through televising the copies [would] prejudice potential jurors against them and prevent them from receiving fair trials", *id.* at 953, the court disagreed that such awareness of the tapes would pose the kind of risk to fair trials that justified curtailing the public's right to courtroom evidence. *Id.* Citing the events of Watergate and the attendant publicity, the court said that the publicity did not prevent selection of jurors who could serve impartially. *Id.*

The court further pointed out that the opportunity for voir dire examination of jurors served as a means of eliminating potentially prejudiced jurors from the panel. *Id. See United States v. Criden,* 648 F.2d 814, 827 (3d Cir.1981). Meeting the argument that release of videotapes would prejudice defendants' possible retrial, the court in *Criden* said that "the appropriate course to follow when the spectre of prejudicial publicity is raised is not automatically to deny access but to rely primarily on the curative device of voir dire examination at the time of any possible retrial". *Id.* In any event, the defendants have already made a motion for a non-jury trial, which was denied by Judge Pratt with leave to renew at a later stage in the event that a proper showing of prejudice is made. See Transcript of April 6, 1983 Hearing at 4025. If, in the unlikely event that no impartial jury can be impanelled in the Eastern District, defendants may once again move for a nonjury trial or for a change of venue.

In addition to the presumption that the public has a right of access to court records, the public interest in the release of the documents submitted with the summary judgment papers is particularly strong in this case. The public has an interest in learning more about the nature of the issues raised by this complex litigation involving thousands of veterans and members of their families; the plaintiffs' claim of exposure to dioxin; and the chemical companies defense that the product was harmless, produced in accordance with government specifications during warfare. Indeed, apart from the Agent Orange litigation, dioxin has sparked much public interest and debate, as contamination has been discovered in the soil of towns and cities around the country.

The words of the Supreme Court in *Nixon v. Warner Communications,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) are instructive. Although it did not rely on the balance test in determining whether to release the Nixon tapes, the court noted that weighing on the side of disclosure was the "incremental gain in public understanding of an immensely important historical occurrence that arguably would flow from the release of the aural copies of [the] tapes". *Id.* at 603, 98 S.Ct. at 1314. It is this gain in public understanding which heightens the public interest in the summary judgment documents, especially in view of the fact that Judge Pratt relied on these documents in his decision to grant the summary judgment motions of four defendants and deny the motions of the other three defendants. The risk, if it exists, of impairment

to the remaining defendants' right to a fair trial simply does not outweigh the public right of access to the documents submitted in the summary judgment proceedings.

On the basis of the foregoing, it is my recommendation that the provisions of the October protective order be lifted insofar as they relate to the material submitted with and referred to in the parties' summary judgment papers.