### In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

#### MDL No. 381.

United States District Court,
E.D. New York.

Oct. 31, 1983.

See also, D.C., 96 F.R.D. 582; D.C., 98 F.R.D. 539.

Victor J. Yannacone, Jr., Yannacone & Associates, Patchogue, N.Y. for plaintiffs.

Leonard L. Rivkin, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., for defendant The Dow Chemical Corp.

Morton B. Silberman, Clark, Gagliardi & Miller, White Plains, N.Y., for defendant T.H. Agriculture & Nutrition Co., Inc.

Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, New York City, for Diamond Shamrock.

Philip D. Pakula, Townley & Updike, New York City, for defendant Monsanto.

William Krohley, Kelley Drye & Warren, New York City, for defendant Hercules, Inc.

Thomas Beck, Arthur, Dry & Kalish, New York City, for defendant Uniroyal.

Howard Lester, Lester, Schwab, Katz & Dwyer, New York City, for defendant Hoffman-Taft.

John M. Fitzpatrick, Dilwarth, Paxson, Kalish & Levy, Philadelphia, Pa., for defendant Hooker Plastics & Chemicals Corp.

David R. Gross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, Newark, N.J., for defendant Thompson Chemical Co.

Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., for defendant Riverdale Chemical Co.

Arvin Maskin and Gretchen Leah Witt, Civ. Div., Dept. of Justice, Washington, D.C., for U.S.

WEINSTEIN, Chief Judge.

The court has requested Special Master Sol Schreiber to consider with counsel and make recommendations to the court with respect to a number of pretrial matters. On one of those matters the special master has recommended in his report dated October 20, 1983, that the protective order of October 14, 1982, relating to discovery material produced by the government be lifted. That report is attached as an appendix to this order.

The court has carefully reviewed the special master's thoughtful analysis and recommendations. There have been no objections from any of the parties. The recommendation is hereby accepted and adopted forthwith.

So ordered.

## APPENDIX

### REEXAMINATION OF OCTOBER 14, 1982 PROTECTIVE ORDER

October 20, 1983

SOL SCHREIBER, Special Master.

Prompted by the need for expediting discovery and preparing this complex multidis-

trict case for a June 1983 trial of the government contract defense, I issued a recommendation on October 14, 1982 that prohibited the parties to this litigation from wholesale disclosure to non-parties of material produced in discovery. See 96 F.R.D. 582, 585 (E.D.N.Y.1983). This recommendation was adopted by Judge Pratt in Pretrial Order No. 43, 96 F.R.D. 582 (E.D.N.Y.1983). The order, which is still in effect as to all discovery material except that submitted in connection with the summary judgment motions decided on May 12, 1983, bars public disclosure of all documents exchanged and all depositions taken in this case. Reexamination of this order as it relates to discovery from the government is the subject of this memorandum. Familiarity with Pretrial Order No. 43, 96 F.R.D. 582 (E.D.N.Y.1983), and with the Special Master's Recommendation re Reexamination of the Confidentiality Order, 98 F.R.D. 539, 541 (E.D.N.Y.1983), is assumed.

## I. BACKGROUND

On May 12, 1983 Judge Pratt granted summary judgment on the issue of the government contract defense to four of the nine defendants in this action. See 565 F.Supp. 1263 (E.D.N.Y.1983). In his careful analysis of the summary judgment motions, Judge Pratt determined that a separate trial on the government contract defense was no longer warranted; he therefore adjourned the June 27, 1983 date which had been scheduled for trial of the government contract defense. Id. at 1275. He also re-affirmed the authority of the Special Master to continue supervising discovery and enlarged my responsibilities for the remaining discovery. Id. at 1277. He further directed the Special Master to consider whether some of the restrictions of the October 1982 protective order prohibiting public disclosure of discovery material should be lifted. Id.

Pursuant to the Court's direction, I issued, on June 21, 1983, a written memorandum reexamining the October 1982 protective order. Recognizing that a variety of documents have been produced and deposi-

tions of numerous witnesses have been taken, I decided that it would be neither wise nor appropriate to lift the protective order as to all documents and depositions en masse. Cf. Zenith Radio Corp. v. Matsushita Electric Industrial Co., Inc., 529 F.Supp. 866, 893–95 (where, in partially lifting an 'umbrella' protective order, the court declined to unseal the documents en masse stating that, inter alia, "public and private interests in the general and efficient management of complex cases militate against [wholesale declassification]". Id. at 887). Instead, I identified three issues, each of which would be examined separately: 1) whether the protective order should be lifted from discovery material submitted with the summary judgment motions, 2) whether depositions should be made public, and 3) the status of other documents produced by the parties and the government in this litigation. My June recommendation addressed the first issue and concluded that documents submitted with the summary judgment motions should be disclosed because, having been considered by the Judge in reaching his decision on those motions, the material had been made part of the judicial record and nothing rebutted the presumption that the public has a right of access to such material. See Special Master's Recommendation re Reexamination of Confidentiality Order, 98 F.R.D. at 545 and discussion, id. at 543–47. Judge Pratt adopted the recommendation in Pretrial Order Number 54, see 98 F.R.D. 539 (E.D.N.Y. 1983). Since my June recommendation I have refined somewhat the remaining two issues presented by the question of whether the protective order should be lifted. Instead of dealing with documents in one memorandum and depositions in a second one, I have divided the issues according to who produced the discovery material. This memorandum will address the issue of whether the discovery material produced by the government—both documents produced by government agencies and depositions of government employees and former employees—should be made public.

## II.  DISCUSSION

On April 29, 1982 Judge Pratt appointed me as Special Master in this action to supervise discovery on issues raised by the government contract defense, which, as of that date, was scheduled for a June 1983 trial.  In the face of having to prepare the case for trial in little more than one year, I made an initial recommendation to prohibit the parties to this litigation from disclosing any documents or the contents of any depositions produced by any of the parties or by the government pursuant to the discovery provisions of the Federal Rules of Civil Procedure.

In October 1982 I issued a formal recommended protective order which Judge Pratt adopted in January 1983.  The order placed a blanket of confidentiality over all documents whether produced by plaintiffs, defendants or the government, regardless of their content.  I stated in my October recommendation that good cause existed for such an order "on the basis of the complexity of this litigation, the emotionalism surrounding the issues, the number of documents yet to be reviewed and the desirability of moving discovery expeditiously in order to meet the June 1983 trial date".  See Special Master's Memorandum Opinion and Protective Order, dated October 14, 1982, at 3.  At that time, depositions in this case had not really begun and there were sharp disputes between defendants and government counsel with regard to documentary production.  Hundreds of thousands of documents which were claimed to be necessary for preparation of the government contract defense had not yet been produced from a vast array of government agencies.  In short, I determined that a blanket protective order would foster the necessary cooperation among the parties and the government and would assist in the efficient and expeditious progress of discovery.

In large measure, the purposes of the October order have been achieved.  Much, if not all, of the discovery on the government contract defense has been completed.  Over the past sixteen months, the United States has produced over 170 current or former employees for deposition by the parties.  The government has also produced over 200,000 microfilmed pages of documents and has made available an additional million pages of documents for inspection by the parties.  While the protective order was necessary as an initial step in getting discovery under way in this large, complex litigation, the orderly progression of discovery since that time and the adjournment of the June 1983 trial date make it desirable to reexamine the protective order, at least insofar as it relates to confidentiality of government documents and depositions of present and former government personnel, to determine whether a reason still exists to prohibit disclosure of such material.

Normally, discovery ought not be cloaked in secrecy.  The rules themselves, by requiring the party seeking a protective order to demonstrate that good cause exists, appear to contemplate discovery in an open atmosphere.  See Rule 26(c) of Fed.R. Civ.P.  See United States v. Hooker Chemicals & Plastics Corp., 90 F.R.D. 421, 425 (W.D.N.Y.1981); Parsons v. General Motors Corp., 85 F.R.D. 724, 726 (N.D.Ga.1980). ("The general rule is that discovery and trial in the Federal Court are on open records available to the public...").  Especially here, the public interest generated by the issues in the case favors openness.  Plaintiffs are veterans of a war which has generated great public controversy; the five defendants include some of the nation's major chemical companies.  The suit raises questions concerning the effects on human beings of dioxin—a substance which has been termed "the most dangerous known to man" and which is alleged to have been a contaminant of "Agent Orange".

Moreover, the public also has an interest in the role the government played with respect to some of the issues raised by this lawsuit.  The defendants supplied "Agent Orange" to the government pursuant to government specifications.  The government has made available to the parties over a million documents, and many of its personnel, both present and former employees, have been deposed.  Indeed, most

of the discovery taken thus far in this case has been taken of the government. In this context, the litigation cannot be considered to be primarily private in nature. At least one writer has noted that the standards for issuing a protective order in litigation which is solely between private parties are different from the standards which obtain when the government seeks to prohibit disclosure of material, see "The First Amendment Right to Disseminate Discovery Materials: *In re Halkin,*" 92 *Harv.L.Rev.* 1550, 1558 n. 63 (1979), because disclosure of material which in private litigation might be protected might be protected may be "proper and even constructive in order to disseminate political information". *Id.* at 1558. *Cf. In re Application of National Broadcasting Company,* 635 F.2d 945, 952 (2d Cir. 1980) (where the court, granting a broadcasting company's request to copy a videotape entered as evidence, stated that the ordinary presumption of public access to courtroom evidence was especially strong where the evidence showed the actions of public officials).

Furthermore, the government does not object to lifting the October protective order. See Transcript of Hearing of September 15, 1983 at 6546, and Transcript of Hearing of September 27, 1983 at 6621. This is not surprising. The Court has established procedures for the government's assertion of executive privilege, 97 F.R.D. 427 (E.D.N.Y.1983), which were designed to achieve a balance between the government's (and the public's) interest in protecting documents which affect the national security and the litigant's (and the public's) interest in discovery of documents relevant to the subject matter of this litigation. That order also set forth guidelines for the government's assertion of the internal deliberations privilege. Both procedures have worked smoothly to date. Also, lifting the October protective order from government discovery material will not affect three protective orders directed at specific categories of government documents, to wit: The protective order, dated May 21, 1980, governing production of documents from the Veteran's Administration, which limits the use

of medical files and other records of nonparties; Pretrial Order No. 42 which adopted the Special Master's recommendation that certain documents produced from the Environmental Protection Agency be used solely for the purposes of this litigation, see 96 F.R.D. 578 (E.D.N.Y.1983); and Pretrial Order No. 47 adopting the Special Master's recommendation that documents from the files of Robert W. Bovey of the United States Department of Agriculture be used solely for purposes of discovery and trial preparation in this litigation, see 97 F.R.D. 424 (E.D.N.Y.1983).

At oral argument, defendants opposed disclosure of government discovery material on the basis that disclosure would result in "pollution of the jury pool" and impair their right to a fair trial. See Transcript of Hearing of September 27, 1983 at 6621 and 6624. In *In re Application of National Broadcasting Company,* 635 F.2d 945 (2d Cir.1980), the Second Circuit rejected the argument that disclosure of the so-called "Abscam" video-tapes which had been used as evidence in the trial of one of the Abscam defendants would prejudice potential jurors against others who were awaiting trial on Abscam charges. Citing the events of Watergate and the attendant publicity, Judge Newman said that the publicity did not prevent selection of jurors who could serve impartially. *Id.* at 953. The Court also pointed out that the opportunity for voir dire examination of jurors served as a means of eliminating potentially prejudiced jurors from the panel. *Id. See also United States v. Criden,* 648 F.2d 814, 827 (3d Cir. 1981) ("[T]he appropriate course to follow when the spectre of prejudicial publicity is raised is not automatically to deny access but to rely primarily on the curative device of voir dire examination . . .").

In any case, the risk of prejudice to a defendant's right to a fair trial must be based on more than mere speculation. *See United States v. Criden,* 648 F.2d 814, 827 (3d Cir.1981); *See also In re Application of National Broadcasting Company,* 635 F.2d 945, 953 (2d Cir.1980). Defendants here have not demonstrated how disclosure of

*government* documents and depositions of *government* personnel will prejudice their right to a fair trial. Several hundred documents—those submitted with the summary judgment papers—have already been released to the public, and, despite defendants' dire predictions, the release appears to have had little, if any, effect on the conduct of the litigation to date.

Defendants also argued that the protective order should not be lifted because persons complying with discovery in this case had done so in reliance on the protective order. In support of this contention they cite *In re Franklin National Bank Securities Litigation,* 92 F.R.D. 468 (E.D.N.Y.1981). In *In re Franklin National Bank,* a nonprofit consumer organization, which was not a party to the litigation, sought to set aside a protective order which sealed all documents concerning the settlement of claims arising out of the collapse of Franklin National Bank. In balancing the interests of the public ("which are presumptively paramount", *id.* at 471) against the interests of the parties, Judge Weinstein found that the intervenor organization added no new weight to the scale which had tipped in favor of keeping settlement terms and related documents confidential. The policy motivating the Court's decision in *In re Franklin National Bank* does not apply here. In Judge Weinstein's case the order of confidentiality served to promote settlement. *Id.* at 472. In this case, by contrast, the sealing order was issued to encourage active cooperation between the parties and the government. That done, and the exigencies of commencing discovery, which were dictated by a June 1983 trial date, having passed, the public interest in access to information concerning the government's role weighs heavily on the side of disclosure of discovery material produced by the government.

Also, defendant's reliance argument fails because it overlooks the fact that the protective order was reviewable upon the expiration of 120 days. The memorandum accompanying the October order recognized that it might become desirable to lift the order as discovery progressed and funda-mental disputes were resolved. See Special Master's Memorandum Opinion and Protective Order dated October 14, 1982 at 9.

My current recommendation concerns lifting the October order only as it relates to any discovery material produced by the government and/or its present or former personnel. This includes any material which will be produced as well as that already produced, unless, of course, non-disclosure is supported by a valid claim of privilege pursuant to the executive privilege guidelines promulgated by the Court, 97 F.R.D. 427 (E.D.N.Y.1983), or a document is protected under one of the three specific protective orders referred to above. Any future sealing of government discovery material—documents or depositions—must be supported by good cause pursuant to Rule 26(c) of the Fed.R.Civ.P. This order does not affect the order relating to the confidentiality of party documents, see Protective Order Regarding Production of Confidential Documents by Defendants, (dated February 6, 1981). The question of lifting the order as it relates to party documents will be examined in subsequent proceedings.

With respect to defendants' claim that party documents were included as exhibits to some of the depositions of government witnesses, the defendants will have ten days from the date this recommendation becomes final to notify the Special Master of those party document exhibits which they do not wish to have disclosed. I will then review the documents to determine whether continued confidentiality is warranted under existing law. This restriction is limited only to documents and not to the deposition testimony which may refer to the documents. Unless party document-exhibits are specifically identified within the ten day period, objection to their disclosure will be deemed waived.