OPINION OF THE COURT
Stephen G. Crane, J.
The question before the court in this repetitive stress injury (RSI) action is whether plaintiffs are entitled to a protective order against nonsettling defendants who seek to discover the terms of confidential settlement agreements entered into between plaintiffs and codefendants. Indeed, it is no secret that plaintiffs Audrey Hulse and Lewis R. Hulse (Hulse) have settled their claims against both A.B. Dick Company (A.B. Dick) and Sony Corporation of America (SONY). An express condition of both settlements, however, was that each party would keep confidential the terms of the settlement agreements, including the consideration paid by the defendants. By order dated September 2, 1993, the court directed that the terms of the settlement between plaintiffs and A.B. Dick shall remain confidential.
The nonsettling defendants long to be let in on this secret. Toward that end, IBM served a notice of discovery and inspection calling for the production of all releases, covenants not to sue or enforce a judgment, settlement agreements, or the amount of consideration given to plaintiffs in this action from any of the named defendants with which plaintiffs have settled.
All parties to this controversy recognize that discovery is limited to what is "material and necessary in the prosecution or defense of an action” (CPLR 3101 [a]) and entails liberal disclosure, upon request, "of any facts bearing on the controversy which will assist preparation for trial by sharpening the *265 issues and reducing delay and prolixity. The test is one of usefulness and reason” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]; Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376 [1991]). Beyond this, the parties agree on little else.
Defendants point to General Obligations Law § 15-108 which, in a multidefendant case such as this, reduces the verdict by the settlement amount of any settling defendant or the settling tortfeasor’s equitable share, whichever is greater. Defendants contend that disclosure of the settlement agreements is material and necessary in order to recalculate their maximum exposure should an unfavorable verdict be reached, or to determine whether they should settle rather than continue to defend against plaintiffs’ claims. As defendants admit, however, these arguments amount to nothing more than trial strategy. Although trial strategy is important to any party in litigation, defendants’ "need” to obtain the settlement information arises not out of materiality or necessity but, rather, desirability. As much as defendants believe that obtaining this information now will better protect them at the time of trial, or assist them in assessing their risk of trial versus settlement, these are neither recognized nor accepted reasons for denying plaintiffs’ motion and disclosing the terms of the settlement agreements.
Defendants next oppose plaintiffs’ motion on the ground that the payment of settlement proceeds to any plaintiff constitutes a collateral source, and, as such, unquestionably is discoverable pursuant to CPLR 4545 (c). This statute provides, in pertinent part: "In any action brought to recover damages for personal injury * * * evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance * * * social security * * * workers’ compensation or employee benefit programs.” A collateral source is an additional, supplementary, or auxiliary source (Black’s Law Dictionary 261 [6th ed]). A collateral source payment to an injured person is one made from a source "wholly independent of the tort-feasor” (Black’s Law Dictionary 262 [6th ed] [definition of collateral source rule]). Payment of proceeds by a settling tortfeasor is a direct payment, as opposed to a collateral source payment.
Defendants’ "settlement as collateral source” argument is further weakened by the provisions of CPLR 4533-b, which *266 provides, in pertinent part: "In an action for personal injury * * * any proof as to payment by or settlement with another joint tortfeasor * * * offered by a defendant in mitigation of damages, shall be taken out of the hearing of the jury. The court shall deduct the proper amount, as determined pursuant to section 15-108 of the general obligations law, from the award made by the jury.” Were settlement proceeds considered collateral source payments, the Legislature would have directed that they be deducted from the jury award as such. However, the statutory scheme of the CPLR, as it now stands, is not consistent with defendants’ argument; indeed, the court finds that settlement proceeds cannot be considered collateral sources. To illustrate, under CPLR 4545 collateral source payments are deducted, dollar for dollar, from a jury award. In contrast, the setoff provided under the scheme of General Obligations Law § 15-108 reduces the verdict against the nonsettling tortfeasor by either the settlement amount or the amount of the released tortfeasor’s equitable share of damages, whichever is greater. If settlement proceeds were considered collateral source payments, the nonsettling defendants would forfeit the benefit of the setoff of General Obligations Law § 15-108. This setoff is intended to encourage settlements (Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34, 40-41 [1976]; Lambert Houses Redevelopment Co. v HRH Equity Corp., 117 AD2d 227, 232 [1st Dept 1986]), and to avoid a result in which the nonsettling tortfeasors bear more than their equitable share of the plaintiffs’ damages (see, Lambert Houses Redevelopment Co. v HRH Equity Corp., supra, 117 AD2d, at 233). Defendants clearly are not arguing that they intend to forfeit the benefit afforded by General Obligations Law § 15-108.
Defendants point to no case law to support their proposition that settlement proceeds constitute a collateral source payment and the court does not find support for this theory in the statutory scheme.[3]
Defendants next contend that they must learn of the terms of the settlement agreements for purposes of impeachment of plaintiffs, and perhaps settling codefendants, who are called as witnesses at the trial. Whether defendants are permitted to *267 establish settlement at the time of trial to show a witness’s bias is a question for the Trial Judge (see, e.g., Meleo v Rochester Gas & Elec. Corp., 72 AD2d 83, 97-98 [4th Dept 1979], lv dismissed 49 NY2d 703). Assuming this is permitted, defendants still cannot establish a necessity for learning the terms and amount of the settlement since it is the mere fact that there was a settlement between plaintiffs and A.B. Dick and plaintiffs and SONY that may, in the eyes of the jury, taint a witness’s credibility. More than this, however, is not necessary for impeachment purposes. Besides, it is difficult to conceive any circumstance in which plaintiff would call a settling codefendant as a plaintiff’s witness. Therefore, defendants’ claim of necessity for trial impeachment purposes is speculative in the extreme.
Defendants contend that the settlement agreement is discoverable as it falls within "any facts bearing on the controversy.” (See, Allen v Crowell-Collier Publ. Co., supra, 21 NY2d, at 406.) Defendants’ singular focus on this language, while ignoring the remainder of the passage, is unpersuasive. Discovery is permitted of evidence which is material, necessary, and relevant, and facts which will sharpen the issues at trial (see, supra). The court fails to see how the terms of the settlement agreements are related, even tangentially, to any material issue in the underlying tort causes of action (Allegretti-Freeman v Baltis, 205 AD2d 859; see also, Bottaro v Hatton Assocs., 96 FRD 158, 160 [ED NY 1982]; cf., Bennet v La Pere, 112 FRD 136, 138-140 [D RI 1986]; Morse/ Diesel v Fidelity & Deposit Co., 122 FRD 447, 451 [SD NY 1988]).
The court now turns to the question of whether case law proscribes secret agreements, specifically, settlement agreements. It is well settled that strong policy considerations favor settlements (Hallock v State of New York, 64 NY2d 224, 230 [1984]; Randall Elec. v State of New York, 150 AD2d 875, 876 [3d Dept 1989]; Allegretti-Freeman v Baltis, 205 AD2d 859, supra). A negotiated compromise of a dispute avoids potentially costly, time-consuming litigation and preserves scarce judicial resources; courts could not function if every dispute required a trial (Denburg v Parker Chapin Flattau & Klimpl, 82 NY2d 375, 383 [1993]; Kalinauskas v Wong, 151 FRD 363, 365 [D Nev 1993]). In addition, there is a societal benefit in recognizing the autonomy of parties to shape their own solution to a controversy rather than having one judicially imposed (Denburg v Parker Chapin Flattau & Klimpl, supra; *268 Kalinauskas v Wong, supra). Most importantly, a settlement produces finality and repose upon which people can order their affairs (Denburg v Parker Chapin Flattau & Klimpl, supra, 82 NY2d, at 383).
In connection with these principles it is recognized that confidentiality is, in certain circumstances, necessary in order to protect the litigants or encourage a fair resolution of the matter in controversy (see, e.g., Brazil, Protecting the Confidentiality of Settlement Negotiations, 39 Hastings LJ 955 [1988]; Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L Rev 1, 28, 49 [1983]; Marcus, The Discovery Confidentiality Controversy, 1991 U Ill L Rev 457 [1991]; Carpinello, Public Access to Court Records in Civil Proceedings: The New York Approach, 54 Alb L Rev 93 [1989]). The court must weigh the goals of encouraging the settlement of disputes and stemming the burgeoning tide of litigation against the rights of those not privy to the settlement agreement. "Courts must have discretion to balance the competing interests of the parties, the public, and the justice systems. When this balance favors confidentiality, confidentiality should be provided.” (Miller, The Private Costs of Public Justice, 63 NY St Bar J 12, 13 [July/Aug. 1991].)
Here, the compelling need for privacy articulated by the plaintiffs outweighs the reasons stated by defendants for discovery of the settlement agreements. Whether this action is characterized as part of a larger "mass tort litigation,” as plaintiffs argue, or as a single action, as defendants assert, is irrelevant. The simple fact is that there are hundreds of RSI cases pending in this court alone, and the settlement agreements reached with SONY and A.B. Dick cannot be viewed in a vacuum. "[I]f a defendant facing multiple plaintiffs seeks to settle a meritorious claim for a certain sum of money, it may be deterred from doing so if it knows that the terms of such a settlement would have to be made public * * * Many defendants would almost certainly proceed to trial rather than broadcast to all potential plaintiffs how much they might be willing to pay.” (Bank of Am. Natl. Trust & Sav. Assn. v Hotel Rittenhouse Assocs., 800 F2d 339, 351-352 [3d Cir 1986] [Garth, J., dissenting].)
The settlement of this case could not have been achieved without an agreement that the terms of the settlement, particularly the consideration paid, would not be revealed. Secrecy was deemed vital by all of the parties to the agreements. This secrecy induced changes of position by the parties relying on *269 it. For the court to decline to support the parties in their reliance upon the agreements they have reached would work an injustice on these litigants and would inhibit future settlements (In re Franklin Natl. Bank Sec. Litig., 92 FRD 468, 472 [ED NY 1981], affd sub. nom. Federal Deposit Ins. Corp. v Ernst & Ernst, 677 F2d 230; see also, Bank of Am. Natl. Trust & Sav. Assn. v Hotel Rittenhouse Assocs., supra, 800 F2d, at 348 [Garth, J., dissenting]). Moreover, keeping intact the secrecy of the settlement agreements, at least in this case, does not result in “Orwellian suppression of the truth.” (See, Wagner, Secrecy Betrays Justice, Natl LJ 17 [July 24,1989].)
In sum, the strong public policy favoring settlement of disputed claims dictates that confidentiality agreements regarding such settlements not be lightly abrogated (Flynn v Portland Gen. Elec. Corp., 1989 WL 112802 [D Ore, Sept. 21, 1989, Frye, J.]). Plaintiffs have persuaded the court that maintaining the confidentiality of the settlement agreements warrants the issuance of a protective order against IBM’s notice for discovery and inspection. Defendants failed successfully to oppose plaintiffs’ motion and to show the relevance of the discovery of the settlement agreements.
[Portions of opinion omitted for purposes of publication.]

. Moreover, the collateral source offset applies only to economic losses, i.e., out-of-pocket damages. To the extent the payment is for reimbursement of intangible losses, such as pain and suffering, CPLR 4545 is inapplicable (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4545:l, at 346).