Jill L. HASBROUCK, Plaintiff,

v.

**BankAMERICA HOUSING SERVICES,
A Division of Bank America, FSB;
and Phil Tullgren, Defendants.**

No. 98–CV–10.

United States District Court,
N.D. New York.

Aug. 4, 1999.

DeLorenzo, Pasquariello, Weiskopf & Gorman, PC, Schenectady, NY, Kevin Hickey, of counsel, for plaintiff.

Nixon, Hargrave, Devans & Doyle, LLP, Albany, NY, Andrew C. Rose, of counsel, for BankAmerica Housing Services, Inc.

Dreyer, Boyajian, LLP, Albany, NY, Daniel J. Stewart, of counsel, for Tullgren.

McNamee, Lochner, Titus & Williams, Albany, NY, Michael Hall, Peter Pastore, of counsel, for Trustco Bank, National Association, a non-party.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Jill L. Hasbrouck ("Hasbrouck" or "plaintiff") filed this action pursuant to 42 U.S.C. § 2000e–2 alleging employment discrimination on the basis of sex. Hasbrouck

seeks an order protecting from discovery the terms of a settlement between she and non-party Trustco Bank, National Association ("Trustco Bank"). Defendants BankAmerica Housing Services, A Division of Bank America, FSB ("BankAmerica") and Phil Tullgren ("Tullgren") oppose the motion. Trustco Bank sought and received permission to be heard on the motion. Trustco Bank supports plaintiff's request for a protective order. Oral argument was heard on behalf of Hasbrouck, BankAmerica, Tullgren, and Trustco Bank on February 26, 1999, in Albany, New York. Decision was reserved.

## II. BACKGROUND

Hasbrouck and Trustco Bank entered into a Settlement Agreement ("Agreement") on October 13, 1994.[1] The Agreement settles "any and all disputes relating to or arising out of Hasbrouck's" employment and termination of employment with Trustco Bank. (DeLorenzo Aff.Ex. A.) Under the Agreement, Trustco Bank would provide prospective employers with minimal information about Hasbrouck's employment there, such as dates and rates of pay. *Id.* ¶ 1. Hasbrouck released Trustco Bank "from any and all claims and causes of action ... including, but not limited to, any and all claims, suits, actions and/or causes of action in contract, tort, and state and federal law (including any claims of sexual discrimination or sexual harassment under state or federal law)." *Id.* ¶ 2. The Agreement also sets forth payment to be made by Trustco Bank to Hasbrouck, in consideration for the release and nondisclosure agreement. *Id.* ¶ 9–11. The Agreement further provides for strict confidentiality, prohibiting disclosure in any manner of any information related to the Agreement or its underlying circumstances.[2] *Id.* ¶ 4. The Agreement sets liquidated damages in the event of a breach, including termination of any further payment due from Trustco Bank to Hasbrouck, and repayment of funds previously paid to Hasbrouck. *Id.*

¶ 12. There was no judicial intervention of any kind relating to the claim Hasbrouck allegedly had against Trustco Bank. Further, the agreement provided for complete confidentiality and did not contain an exception for disclosure as ordered by a court or pursuant to judicial process.

Hasbrouck asserts wrongful termination and hostile work environment claims against BankAmerica and Tullgren. Hasbrouck was employed by BankAmerica from 1994 until her termination on June 30, 1997. Tullgren was Hasbrouck's supervisor for all except the last few months of her employment. Hasbrouck alleges that Tullgren's conduct was continuously harassing during her entire tenure with BankAmerica. Hasbrouck commenced this action on January 5, 1998. The parties have engaged in discovery, leading to the current dispute. Only the course of discovery pertinent to resolution of this motion will be set forth.

In August 1998, BankAmerica served Trustco Bank with a subpoena requiring production of the Agreement and Hasbrouck's personnel file. Trustco Bank produced the personnel file, as permitted by the Agreement. However, Hasbrouck objected to production of the Agreement. Eventually a stipulation was entered into permitting production of a redacted version of the Agreement for discovery. *See supra* note 2.

In December 1998 BankAmerica noticed Hasbrouck to appear for a deposition on December 22, 1998. Hasbrouck appeared, and questions were propounded to her regarding the facts and circumstances surrounding the settlement with Trustco Bank. Hasbrouck objected to the questions and refused to answer pending a ruling on a motion brought pursuant to Fed.R.Civ.P. 26(c).

## III. DISCUSSION

### A. Standard for Protective Order

■ Discovery of any relevant, nonprivileged information is generally permissible.

---

1. Another former employee and attorney Thomas E. DeLorenzo were also signatories to the Agreement. However, their participation in the settlement is irrelevant to the matter presently before the court.

2. Plaintiff, defendants, and Trustco Bank entered into a confidentiality stipulation permitting disclosure of a redacted version of the Agreement for the purposes of discovery. The stipulation was so ordered by the court and filed on October 1, 1998. All papers relating to this motion were filed under seal, upon request and court order.

Fed.R.Civ.P. 26(b)(1). The information need not be admissible if reasonably calculated to lead to admissible evidence. *Id.* The liberality of the discovery rules provides significant opportunity for abuse by the parties seeking discovery. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). The liberal discovery rules "may seriously implicate privacy interests of litigants and third parties." *Id.* at 35, 104 S.Ct. 2199. Thus, for good cause shown the court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c); *In re Agent Orange Prod. Liability Litigation,* 821 F.2d 139, 145 (2d Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). The protective order may wholly preclude the discovery, or provide for limitations as necessary to protect the moving party. Fed.R.Civ.P. 26(c).

Good cause must be established by particular and specific facts rather than conclusory assertions. *Wendt v. Walden Univ., Inc.,* No. CIV. 4–95–467, 1996 WL 84668, at *2 (D.Minn. Jan. 16, 1996); *Blum v. Schlegel,* 150 F.R.D. 38, 41 (W.D.N.Y.1993); *Palomba v. Barish,* No. 85–1278, 1986 WL 8484, at *2 (E.D.Pa. July 30, 1986); *Waltzer v. Conner,* No. 83 Civ. 8806(SWK), 1985 WL 2522, at *1 (S.D.N.Y. Sept. 12, 1985). Finally, if the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order. *Sheppard v. Beerman,* No. 91–CV–1349(ILG), 1999 WL 389894, at *3 (E.D.N.Y. Apr. 21, 1999); *Wendt,* 1996 WL 84668, at *2; *Brown v. City of Oneonta,* 160 F.R.D. 18, 20 (N.D.N.Y. 1995); *Blum,* 150 F.R.D. at 42; *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 169 (E.D.N.Y.), *aff'd,* 870 F.2d 642 (Fed.Cir. 1988); *New Castle County v. Hartford Accident & Indemnity Co.,* No. M8–85 (MEL), 1987 WL 10736, at *2 (S.D.N.Y. May 1, 1987); *Laxalt v. McClatchy,* 116 F.R.D. 455, 458 (D.Nev.1986); *Tavoulareas v. Washington Post Co.,* 111 F.R.D. 653, 660 (D.D.C. 1986); *Palomba,* 1986 WL 8484, at *2; *Lin-*coln American Corp. v. Bryden,* 375 F.Supp. 109, 112 (D.Kan.1973).

It must be noted that a more stringent standard than that just outlined is not applicable in this case.[3] For example, a demonstration of egregious injury is necessary where there is a First Amendment right to disclosure of the information to be protected. *See, e.g., Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 792 n. 31 (3d Cir.1994) (distinguishing line of cases dealing with First Amendment issues); *United States v. Exxon Corp.,* 94 F.R.D. 250, 251 (D.D.C.1981); *see also, Anderson v. Cryovac, Inc.,* 805 F.2d 1, 6–7 (1st Cir.1986) (reviewing implication the First Amendment has on protective orders); *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471, 478–80 (S.D.N.Y.1982) (discussing the disagreement as to applicable standards to be applied where there is First Amendment interest). In this case, the information sought is not a part of the public record and there is no First Amendment right to access. *See Seattle Times,* 467 U.S. at 32, 33 n. 19, 37, 104 S.Ct. 2199 (no First Amendment scrutiny required for protection of material not a matter of public record); L.R. 26.2 (discovery material routinely not filed). Accordingly, a showing that egregious injury would result from disclosure is unnecessary.

Also not applicable in this case is a heightened standard, requiring a showing of cognizable harm or serious injury to business interests, as set forth in *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 529 F.Supp. 866, 889 (E.D.Pa.1981). The test set forth in *Zenith Radio* applies only to protection of trade secrets or confidential commercial information pursuant to Fed.R.Civ.P. 26(c)(7). *Id.* The *Zenith Radio* test requires a showing that (1) the information is a trade secret or confidential business information; (2) disclosure would cause cognizable harm; and (3) the party seeking protection has shown good cause. *Id.* The information sought in discovery here is private, confidential information and not a trade secret or commercial information. *See id.; see also Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171

---

**3.** The papers submitted for this motion indicate an apparent reliance on such a stringent stan-dard. This reliance is rejected.

F.R.D. 135, 143 (S.D.N.Y.1997) (demonstration of "clearly defined and very serious injury to its business" prerequisite to protection under 26(c)(7)); *United States v. International Bus. Mach. Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y.1975) (court considered protection, under 26(c)(7), of depositions required by statute to be public). Thus, the *Zenith Radio* test is clearly not applicable. 529 F.Supp. at 889; *see New Castle County*, 1987 WL 10736, at *1 (distinguishing the test used in *International Bus. Mach. Corp.*, 67 F.R.D. at 46, in non-Rule 26(c)(7) case).

Finally, the showing of extraordinary circumstances or compelling need required for modification of a previous confidentiality order that has been relied upon by the parties is inapposite here. *See Palmieri v. New York*, 779 F.2d 861, 862 (2d Cir.1985); *FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir.1982). In *Palmieri*, for example, the parties proceeded with discovery and then entered into a settlement agreement under a confidentiality order sought and granted pursuant to Fed.R.Civ.P. 26(c). 779 F.2d at 863–64. Subsequently the Attorney General as intervener sought modification of the protective order. *Id.* at 864. The court held that the parties' reliance on the protective order, assuming it was not improvidently granted, rendered the intervener's burden heavier. *Id.* at 864–65.

Here, the settlement and confidentiality agreement between Hasbrouck and Trustco Bank was not ordered by a court, nor even filed with a court. Accordingly, good cause is the proper standard by which to evaluate the propriety of a protective order.

## B. Good Cause

■ Plaintiff and Trustco Bank argue that good cause exists to protect the terms and circumstances of their settlement from disclosure. The Agreement clearly sets forth the parties' intent to maintain confidentiality surrounding the settlement. (*See generally* DeLorenzo Aff.Ex. A.) The agreement requires Hasbrouck and Trustco Bank to refrain from disclosing circumstances surrounding the settlement, and provides penalties for breach. Hasbrouck and Trustco Bank agreed that "confidentiality is of the essence of the Agreement." *Id.* ¶ 4. The penalties for breach include repayment of monies already paid to Hasbrouck, as well as forfeiture of future payments otherwise due.

Defendants suggest that if the court ordered Hasbrouck to disclose confidential information, the court could also somehow protect her from such a penalty. However, the language of the agreement between Hasbrouck and Trustco Bank must control: a monetary penalty would ensue against Hasbrouck should she breach the confidentiality of the Agreement, regardless of whether she voluntarily discloses the information sought or it is obtained through judicial process. *Cf. Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc.*, 821 F.Supp. 370, 373 (E.D.Pa.1993) (permitting disclosure pursuant to terms of agreement, that specified confidentiality "except as required by law or by judicial or administrative process or regulation"); *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D.Nev.1993) (penalties for disclosure not applicable where agreement permitted court-ordered disclosure); *Reiser v. West Co.*, No. 88–0334, 1988 WL 35916, at *1 (E.D.Pa. Apr. 14, 1988) (refusing to protect information sought where settlement agreement excepted disclosures "pursuant to legal process"). In addition to the monetary penalty to which Hasbrouck would be subject should she be compelled to disclose the information sought, she would be placed in the situation of having to try the claim against Trustco Bank in this suit.

BankAmerica admittedly intends to use information obtained regarding the prior claim to impeach plaintiff's credibility. Portraying plaintiff as a professional litigator would certainly, to some extent, be of prejudice. BankAmerica intends, if able, to label plaintiff as an opportunist, as evidenced by her prior assertion of an unsubstantiated, if not fabricated, harassment claim. (BankAmerica's Mem. Law at 9.) Thus, plaintiff would be forced to submit evidence substantiating the prior claim, which terminated in a completely private settlement, with no court intervention and no discovery of documents or witnesses. Gathering evidence regarding a prior, settled lawsuit would be annoying, embarrassing, and burdensome.

Plaintiff further argues that if she discloses the information sought, and if that information constitutes accusations against Trustco Bank, she may be subject to a lawsuit sounding in defamation. As truth is the only defense to such a claim, Hasbrouck argues, she would be forced to litigate issues settled with Trustco Bank. Again, being forced to litigate an already-settled lawsuit would be annoying, embarrassing and burdensome.

BankAmerica and Tullgren argue that plaintiff cannot claim harm from disclosure when it was her choice to file the instant lawsuit. They suggest she simply has a choice to make: she must either drop this lawsuit (in order to retain confidentiality of the prior Agreement), or disclose the information they seek and pay whatever penalty ensues from the disclosure. Even assuming, *arguendo,* that there is some relevance to the information sought,[4] it simply cannot be that because a plaintiff settles a prior claim she is precluded from pursuing later harassment claims. It defies logic, and contravenes the remedial purpose of discrimination statutes, to propose that once a victim of discrimination has obtained redress she cannot seek redress for future discrimination. A rule that would, in effect, limit a victim of multiple instances of discrimination to redress for a single incident must be rejected.

The holding in *Marine Midland Realty Credit Corp.* is instructive. In that case, the plaintiff sought to disclose the terms of a prior settlement with defendant. 821 F.Supp. at 372. The financial terms of the settlement were central to the lawsuit. *Id.* Under the settlement agreement the terms of settlement were to remain confidential except as "required by law or by judicial or administrative process or regulation." *Id.* at 373. Defendant sought a protective order arguing that plaintiff's situation did not fall within the exception for disclosure provided for in the settlement agreement because the plaintiff voluntarily initiated the current lawsuit. *Id.* The court reasoned that

if [plaintiff] is to take advantage of its right to seek redress in a court of law for its claimed injury, it is required by law or judicial process to bring a lawsuit and to divulge the settlement amount. Failure to file the lawsuit will mean that [plaintiff] will have to forego that important right. Moreover, any decision by this Court to order the financial terms of the settlement to remain confidential will prevent [plaintiff] from attempting to obtain any recompense to which it believes it is entitled.

*Id.* The court therefore held that the language of the settlement agreement must control and that plaintiff could divulge the financial terms. *Id.* Thus, the court protected the plaintiff's right to seek redress in a court of law while enforcing the terms contracted between the parties to the settlement agreement.

In a similar manner, Hasbrouck's right to seek redress under the federal discrimination statute should not be undermined by her prior claim and settlement. Requiring Hasbrouck to disclose the information sought in order to continue this lawsuit would prevent her from seeking redress for the alleged discrimination by BankAmerica and Tullgren, or to forfeit the redress she received for an alleged prior wrong. Hasbrouck cannot be required to divulge information that she contracted to remain confidential as a prerequisite to seeking redress for violation of a federal right.

Trustco Bank argues that it bargained for confidentiality, and that bargain should be upheld by the court. Trustco Bank argues that, if the court fails to protect the settlement agreement, plaintiff must either (1) abide by the Agreement and discontinue her current suit against BankAmerica and Tullgren; or (2) breach the Agreement and continue to prosecute this suit. In essence Trustco Bank's argument is that plaintiff contractually waived her right to effectively litigate a subsequent harassment lawsuit (if she retains the benefit of the prior settlement). Forced waiver of redress for subse-

---

4. It has not been established that Hasbrouck's alleged claim against Trustco Bank was for sex discrimination.

quent violation of rights would constitute a burden upon Hasbrouck.

Trustco Bank argues that it is entitled to the benefit of its bargain. No doubt, if disclosure is ordered Trustco Bank would be denied the benefit, confidentiality, for which it contracted. Such a lost benefit would constitute an annoyance as well as a burden. Additionally, if the confidential information is disclosed, Trustco Bank would be forced to continue participation in this lawsuit, to which it is not a party, in order to continue to protect its own interests. *See Blum*, 150 F.R.D. at 42 (disclosure of private information would require continued participation in lawsuit, subjecting non-party to burden and expense to ensure against further oppression).

As demonstrated by the foregoing, Hasbrouck has demonstrated good cause for an order protecting the confidential information relating to her settlement with Trustco Bank. Moreover, Trustco Bank has demonstrated good cause why it should be protected from annoyance, embarrassment, and burden, as a non-party to this lawsuit. A balancing of the equities will finally determine the extent of protection needed.

## C. Balance of Equities

■ Several important interests require consideration. Hasbrouck and Trustco Bank have demonstrated a privacy interest in the information sought. Settlement of claims without judicial intervention contrasted with public interest in an open judicial system implicate public policy interests. Public policy interests in the speedy resolution of conflicts and judicial efficiency are involved. There may be a countervailing public interest in open discovery in support of a claim or defense. Finally, the defendants have a private interest in full discovery of information relating to defending their claim.

Hasbrouck has an interest in maintaining the confidentiality of the information as required by the Agreement, so that she will not be in breach and subject to further liability to Trustco Bank. Trustco Bank relies on the Agreement, and the benefit of its bargain, to maintain the secrecy of its confidential information. The rights of the parties as contracted between them deserve the protection of the court. *See Kalinauskas*, 151 F.R.D. at 365. Trustco Bank's privacy interest in the information is given additional weight because it is not a party to this suit. *See Laxalt*, 116 F.R.D. at 457; *Tavoulareas*, 111 F.R.D. at 660; *see also Blum*, 150 F.R.D. at 41–42 (considering unfairness to nonparty of disclosure). Thus, both Hasbrouck and Trustco Bank have established a privacy interest in the information sought.

Moreover, protecting the confidentiality of the settlement agreement promotes the important public policy of encouraging settlements. *See Marine Midland Realty Credit Corp.*, 821 F.Supp. at 373; *see also FDIC v. Ernst & Ernst*, 92 F.R.D. 468, 472 (E.D.N.Y. 1981) (unsealing a settlement that was based upon confidentiality would discourage future settlements based upon confidentiality), *aff'd*, 677 F.2d 230 (2d Cir.1982); Fed.R.Evid. 408 advisory committee note (purpose of rule making evidence of settlement negotiations inadmissible is to encourage settlement). Settlement of civil disputes is in the public interest because it avoids the significant cost of trial. *Id.; Kalinauskas*, 151 F.R.D. at 365; *Ernst & Ernst*, 92 F.R.D. at 472; *Hulse v. A.B. Dick Co.*, 162 Misc.2d 263, 267, 616 N.Y.S.2d 424 (N.Y.Sup.Ct.1994), *aff'd*, 222 A.D.2d 381, 635 N.Y.S.2d 641 (1st Dep't 1995). In addition to conservation of judicial and private resources, settlement results in higher levels of satisfaction of the litigants, having determined their own solution to their dispute rather than being subject to a judicially-created solution. *Kalinauskas*, 151 F.R.D. at 365; *Hulse*, 162 Misc.2d at 268, 616 N.Y.S.2d 424. "Most importantly, a settlement produces finality and repose upon which people can order their affairs." *Hulse*, 162 Misc.2d at 268, 616 N.Y.S.2d 424.

Confidentiality is an important corollary without which many lawsuits would remain unsettled. *See City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir.1991) (judicial assurance of confidentiality prerequisite to settlement); *Marine Midland Realty Credit Corp.*, 821 F.Supp. at 373 ("confidentiality is often essential to the settlement of cases"); *Ernst & Ernst*, 92 F.R.D. at 469 (secrecy vital to a party); *Hulse*, 162 Misc.2d at 268,

616 N.Y.S.2d 424 ("compelling need for privacy" expressed by settling party). While protecting the confidentiality of settlement agreements encourages settlement, which is in the public interest, permitting disclosure would discourage settlements, contrary to the public interest. *Cf. Kalinauskas*, 151 F.R.D. at 365 (allowing full discovery would discourage similar settlements; settlement benefits society); *Ernst & Ernst*, 92 F.R.D. at 472 (modifying confidentiality order would discourage future settlements based upon confidentiality; public interest furthered by settlement). The public interest in maintaining confidentiality of settlements is therefore strong.

A countervailing public interest[5] is affording a litigant the opportunity to broadly discover information in support of its case. *See* Fed.R.Civ.P. 26(b); *McKnight v. Stein Mart, Inc.*, Civ. A. No. 95–0258, 1996 WL 481079, at *1 (E.D.La. Aug. 22, 1996) (settling party should not be able to buy silence of witnesses with a settlement agreement); *Wendt*, 1996 WL 84668, at *2 (same); *Kalinauskas*, 151 F.R.D. at 367 (settlement agreements that suppress evidence violate public policy). However, there is no First Amendment right to access information necessary to try a lawsuit; access is permitted by legislative grace. *Seattle Times*, 467 U.S. at 32, 104 S.Ct. 2199; *see also Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965) (First Amendment does not give "unrestrained right to gather information). Moreover, while there may be some public interest in

dissemination of information accessed in discovery, there is no constitutional right to do so." *Seattle Times*, 467 U.S. at 31–32, 104 S.Ct. 2199.

Neither BankAmerica nor Tullgren posits a public interest argument in opposition to the motion for protective order. Both, however, argue that the information sought is relevant and calculated to lead to admissible evidence, as required by Fed.R.Civ.P. 26(b)(1). Accordingly, the private interest of BankAmerica and Tullgren in the ability to discover information in support of their cases will be considered, rather than any public benefit accorded due to the policy upon which the broad discovery rules are based, *see New Castle County*, 1987 WL 10736, at *2 (general assertion of public benefit insufficient to outweigh good cause shown). The weight of the private interest of BankAmerica and Tullgren is derived directly from their need for the information.

BankAmerica and Tullgren assert essentially three areas of need for information regarding the settlement between Hasbrouck and Trustco Bank. First, BankAmerica argues that information relating to Hasbrouck's claim against Trustco Bank may support its affirmative defenses, as recently set forth by the United States Supreme Court. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, ——, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, ——, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998).[6]

---

**5.** There can be no argument that there is a public policy interest in access to judicial information. *Cf., e.g., United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.1995) (finding mere filing of a paper is insufficient to render it a judicial document); *Tavoulareas*, 111 F.R.D. at 660. The settlement/confidentiality agreement at issue here was not ordered by a court nor filed with a court. In fact, a lawsuit was never filed prior to Hasbrouck and Trustco Bank entering into the Agreement.

Similarly, there can be no claim of a general public interest in "understanding disputes that are presented to a public forum for resolution." *See Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir.1980). The dispute between Hasbrouck and Trustco Bank was settled between them, without resort to a public forum for resolution.

**6.** The Court held that if a supervisor with authority over the complainant is the alleged harasser

the employer is liable. *See Burlington Indus.*, 118 S.Ct. at 2270; *Faragher*, 118 S.Ct. at 2293. However, if there has been no tangible job action then the employer may escape liability by showing: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm or otherwise." *See Burlington Indus.*, 118 S.Ct. at 2270; *Faragher*, 118 S.Ct. at 2293. The Court further found that ordinarily where an employer demonstrates that the complainant unreasonably failed to use a complaint procedure provided by the employer the second element of the defense will be satisfied. *See Burlington Indus.*, 118 S.Ct. at 2270; *Faragher*, 118 S.Ct. at 2293.

BankAmerica argues that Hasbrouck's experiences at Trustco Bank may show the unreasonableness of her conduct in relation to BankAmerica by indicating her recognition of improper conduct, understanding of avenues of redress, and a heightened sensitivity to allegedly harassing conduct. The implication is that prior sexual harassment increases a plaintiff's burden of reasonableness when again confronted with sexually harassing behavior. This argument must fail. Prior experience with sexual harassment is by no means a prerequisite for recognition of sexually harassing behavior.

Prior experience with seeking redress for harassing conduct is likewise not helpful to BankAmerica's affirmative defense. What will be in issue in this lawsuit is whether BankAmerica provided an avenue to prevent and promptly correct harassing behavior. *See Burlington Indus.,* 118 S.Ct. at 2270; *Faragher,* 118 S.Ct. at 2293. The policy of BankAmerica, and whether Hasbrouck unreasonably failed to take advantage of that policy to correct harassment, will be determinative of the affirmative defense. *See Burlington Indus.,* 118 S.Ct. at 2270; *Faragher,* 118 S.Ct. at 2293. Whether Trustco Bank had a policy for remedying harassing conduct, and, if so, whether Hasbrouck followed that policy (or unreasonably failed to take advantage of it) is of no bearing in regard to the issues in this lawsuit.

The reasonableness of Hasbrouck's conduct is only put in issue by the recent *Burlington Industries* and *Faragher* cases and the affirmative defenses set forth therein. Any minimal relevance Hasbrouck's conduct with regard to alleged harassment at Trustco Bank would have relating to BankAmerica's affirmative defenses would not overcome the significant interests in maintaining confidentiality pursuant to the agreement between Hasbrouck and Trustco Bank.

Further, the information sought by BankAmerica is not necessary to establish that Hasbrouck has a heightened sensitivity to harassing conduct. BankAmerica seeks disclosure of the Agreement itself, the payments made under the Agreement, specifics regarding the type of claim involved and allegations made by Trustco Bank employees, lists of witnesses to objectionable conduct allegedly occurring at Trustco Bank, details regarding Trustco Bank employees' use of its reporting procedures for sexual harassment, specifics regarding any other claim Hasbrouck made against any other employer, and specifics regarding any other claims made by Trustco Bank employees against Trustco Bank. Information about Hasbrouck's reaction to certain conduct may be obtained by directly questioning Hasbrouck, without any mention of the settlement or circumstances surrounding the prior claim.

BankAmerica argues that Hasbrouck's heightened sensitivity goes to the reasonableness of any delay in reporting the conduct complained of in the instant case and whether the conduct was severe or pervasive. Even conceding that the information sought may be minimally relevant to establishing heightened sensitivity, it is unclear how the information relates to Hasbrouck's sensitivity. It is also not clear how her heightened sensitivity, if any, would be probative of the reasonableness of delay in reporting the allegedly harassing conduct through BankAmerica channels or of the severity or pervasiveness of the harassment. Moreover, even if there is probative value to Hasbrouck's level of sensitivity to harassing conduct, such information should be available to BankAmerica without disclosure of information regarding the Agreement and surrounding circumstances.

BankAmerica cites *EEOC v. Buffalo Broad, Co.,* No. 93–CV–977A, 1994 U.S. Dist. LEXIS 20637 (W.D.N.Y. Dec. 1, 1994) in support of its argument that the specifics of the Agreement and prior claim should be admissible. Buffalo Broadcasting sought information relating to a prior age discrimination claim brought by the plaintiff to support its defense based upon frivolity of the prior and current claims. *Id.,* at *3. Buffalo Broadcasting theorized that where the underlying discrimination claim was frivolous, the current retaliation claim had no merit. *Id.* The court therefore granted the motion to compel production of information relating to the prior claim. *Id.* In this case, however, the claim Hasbrouck may have had against

Trustco Bank is not a predicate to a retaliation claim. The two claims are in fact not related. Thus, the reasoning of the *Buffalo Broadcasting* Court's decision is inapposite here. It is also noteworthy that the *Buffalo Broadcasting* decision was on a motion to compel, decided based upon relevance. *Id.* Here, the motion is one for a protective order based upon a showing of good cause and balancing of interests.

Second, BankAmerica and Tullgren argue that information surrounding the Agreement is needed to impeach Hasbrouck's credibility. Specifically, defendants would like to present Hasbrouck as an opportunist who received substantial money by making an unsubstantiated harassment claim and who is now repeating the process. (Rose Aff.Ex. I.) As previously noted, to permit disclosure of the Agreement for this purpose would force Hasbrouck to litigate the merits of her prior claim against Trustco Bank. Disclosure may also require non-party Trustco Bank to participate as intervener in this suit in order to protect its interests. Hasbrouck and Trustco Bank previously determined not to litigate the merits of that claim but rather to settle the claim out of court, and to force them to litigate those issues would prejudice them. Moreover, the fact of settlement,[7] without going into details regarding the Agreement, would be sufficient to impeach Hasbrouck's credibility as a chronic litigator. *See Hulse,* 162 Misc.2d at 267, 616 N.Y.S.2d 424.

Third, defendants argue that the information sought is relevant to the issue of damages. They argue that plaintiff's alleged emotional distress resulting from harassment at BankAmerica may be lessened by emotional distress suffered previously. The information, defendants argue, would be relevant to establishing an "emotional baseline" from which to measure Hasbrouck's distress resulting from subsequent harassment. Additionally, Tullgren asserts that leaving BankAmerica's employ would be less traumatic for plaintiff because the financial impact of being unemployed would not be as severe due to the payments she received as prescribed by the Agreement. In no way, however, do defendants explain the relevance of the specific information sought regarding the Agreement to Hasbrouck's emotional state. Any information regarding plaintiff's emotional state before and after her employment with BankAmerica could be obtained without reference to the details of the Agreement and the surrounding circumstances.[8] For example, Tullgren could inquire about plaintiff's income at the time she left BankAmerica's employ without referring to the Agreement or the previous claim against Trustco Bank. In this way, defendants could establish the level of trauma suffered by Hasbrouck due to her job loss based upon the resulting financial hardship. Specifics regarding the Agreement and the circumstances of Hasbrouck's employment by Trustco Bank appear unnecessary, or at the most minimally relevant.

There is a strong public interest in encouraging settlements and in promoting the efficient resolution of conflicts. This strong public interest outweighs any general public interest in providing litigants broad discovery of facts to support their claims and defenses. Finally, the minimal relevance of the discovery sought illustrates the slight interest defendants have in disclosure, particularly when the availability of relevant evidence through other means is considered. The balance of the equities weighs in favor of protecting the terms of the Agreement and the surrounding circumstances.

The final issue for determination is the level of protection to be granted. The court may make any order as justice requires, including precluding the discovery, limiting the terms and conditions under which discovery may be had, limiting the method of discovery, specifying the scope of discovery, limiting the persons to whom disclosure is made, and limiting disclosure in other ways not applicable here. *See* Fed.R.Civ.P. 26(c). Based upon the strong showing of good cause made by Hasbrouck and Trustco Bank, the

---

7. Admissibility of the fact of the settlement between Hasbrouck and Trustco Bank is a determination that must be made by the trial judge at the time of trial.

8. Again, a ruling on the admissibility of any such evidence must await a decision by the trial judge at the time of trial.

substantial public interest in maintaining confidentiality of settlements, and the slight, if any, relevance demonstrated by BankAmerica and Tullgren, the Agreement must be given the full amount of protection affordable under Rule 26(c).[9] *Compare Blum*, 150 F.R.D. at 42 (finding serious harm outweighed relevance therefore ordering that discovery not be had), *and Laxalt*, 116 F.R.D. at 458 (withholding discovery where minimal relevance outweighed by privacy & confidentiality interest), *and Flynn v. Portland General Elec. Corp.*, CIV. No. 88–455–FR, 1989 WL 112802, at *2 (D.Or. Sept. 21, 1989) (prohibiting disclosure of matters within the scope of settlement order where strong policy favored maintaining confidentiality and parties seeking discovery showed insufficient need), *with McKnight*, 1996 WL 481079, at *1–2 (finding that interest in confidentiality can be adequately preserved by limiting disclosure, where facts sought may be relevant and admissible, and public interest served by disclosure of facts regarding similar claims of discrimination by the same party), *and Wendt*, 1996 WL 84668, at *2 (finding that where evidence is likely indispensable to plaintiff's case, an order limiting scope of disclosure sufficiently serves defendant's interest in preserving its name), *and Kalinauskas*, 151 F.R.D. at 366–67 (permitting discovery into facts underlying discrimination claim & settlement where it would likely lead to relevant evidence of similar conduct, no prejudice or injury shown to likely result from disclosure, and the agreement provided that a court could order disclosure), *and Lincoln American Corp.*, 375 F.Supp. at 112 (upholding order compelling discovery where there was a "convincing demonstration of relevancy and good cause").

## IV. CONCLUSION

Plaintiff Hasbrouck and non-party Trustco Bank have demonstrated good cause to protect them from annoyance, embarrassment, oppression, and undue burden or expense. An analysis of the public and private interests in both protection and disclosure demon-

strates that the balance of equities favors protection. Accordingly, it is

ORDERED that the motion for a protective order filed by Hasbrouck and supported by Trustco Bank is GRANTED. The discovery sought by defendants shall not be had.

IT IS SO ORDERED.

9. Affording Hasbrouck and Trustco Bank the full amount of protection available in no way indicates what result would be reached had their Agreement provided an exception for disclosure pursuant to judicial process or order.