OPINION OF THE COURT
Carol Robinson Edmead, J.
In this wrongful death action arising from the March 15, 2008 tower crane collapse (the accident) in New York City, plaintiff Denise C. Bleidner (Bleidner), individually and as executrix of the estate of Wayne R. Bleidner, deceased, moves pursuant to 22 NYCRR 216.1 for an order temporarily sealing the settlement terms, sum and allocation of the estate of Wayne R. Bleidner, including but not limited to the death compromise that shall be submitted to the court, and directing that said documents shall be and remain sealed and confidential until all wrongful death cases arising from the same incident herein are resolved.
Factual Background
Wayne Bleidner was operating a crane during the construction of a high-rise building at 303 East 51st Street in New York City (the site), when the crane collapsed, resulting in his death, and the deaths and serious injuries of many other workers at the site. This action, along with approximately 60 separate lawsuits resulting from the accident, was commenced and later consolidated for discovery.
On the eve of trial, the parties met before a JAMS mediator, and agreed on a settlement (the Bleidner settlement). According to Bleidner, the settlement was placed on the record, and the parties agreed that the settlement terms would be kept confidential. Thus, while the remaining litigants to the consolidated action were advised that this action was settled, they were not advised as to which of the defendants participated in the settlement, the amount of the settlement, the amount of any of the participants’ participation or any conditions of the settlement.
*408 Bleidner now moves to temporarily seal the settlement and sum until all of the wrongful death actions are resolved. Bleidner argues that good cause exists for the sealing. The parties agreed to confidentiality at the request of defense counsel at the outset of settlement negotiation, who contended that sealing was “necessary” so as to foster and promote the resolution of the remaining wrongful death actions on a subjective, case-by-case basis and not by comparison to the Bleidner settlement.[1]
In response, Crave Foods, Inc. (Crave), a plaintiff in one of the consolidated actions (117452/08), opposes sealing.[2] Crave contends that sealing would deprive Crave (and other litigants) of knowledge of the participants in the Bleidner settlement, the amounts the parties (and the parties’ insurance carriers) consider reasonable to pay in settlement and the amounts by which the policies whose coverage was disclosed pursuant to case management order 4 and CPLR 3101 (f) have been diminished.
Whether to try the case, seek settlement or accept a settlement at a particular amount is based on a multitude of factors, including (a) which defendants appear minded to settle the case; (b) conversely, which defendants appear prepared to go to trial; (c) the amount of available insurance remaining to satisfy judgments or settlements; and (d) the number of competing open actions against the defendants and the amounts credibly claimed in each. Sealing of the Bleidner settlement would eliminate Grave’s counsel’s ability to adequately advise Crave of any of the foregoing except the number of competing actions, thereby denying Crave the information needed to make an informed decision whether to seek settlement, whether to settle for a particular offer if one is made, or whether to try their case.
Crave submits that as a litigant and member of the public, it and its counsel have a right to access to the Bleidner settlement records. Under New York law, all court records and judicial proceedings are presumptively open to inspection by anyone in order to ensure that they are conducted efficiently, honestly, and fairly. Judiciary Law §§ 4, 255 and 255-b require that, with certain exceptions not applicable here, court proceedings, court records and docket books be available to the public. The public’s *409 right is also grounded in common law, to “safeguard an accused’s right to be dealt with fairly and not to be unjustly condemned” and to “instill a sense of public trust in our judicial process by preventing the abuses of secret tribunals” (People v Hinton, 31 NY2d, 71, 73 [1972]).
Further, good cause is not established to support sealing pursuant to 22 NYCRR 216.1. Courts are reluctant to seal court records even where both sides agree to sealing.
And, that confidentiality will promote the resolution of the remaining wrongful death actions does nothing to vindicate Grave’s right to just compensation given that Crave is not a wrongful death plaintiff, but alleges property damage. Under CPLR 103 (a), there is “only one form of civil action”; no distinction is made between wrongful death and property damage claims; nor is monetary loss due to property damage considered different from monetary loss under the wrongful death statute. It is unjust to deprive Crave (and other non-wrongful death parties) of the right to just compensation to benefit the wrongful death plaintiffs and defendants. Also, CPLR 104 recites that the CPLR “shall be liberally construed to secure the just, speedy and inexpensive determination of every civil judicial proceeding.” Thus, resolution by means of settlement is a means, but not a goal of the civil justice system.
Grave’s right to review and copy judicial records also arises from the First and Sixth Amendments to the United States Constitution as applied to the states by the Fourteenth Amendment, requiring that the public as well as the press is generally entitled to have access to court proceedings. Thus, any order denying access must be narrowly tailored to serve compelling objectives, such as a need for secrecy that outweighs the public’s right to access.
Plaintiffs Jean Squeri (index No. 103802/2009) and John D. LaGreco/Gubar (index No. 107527/2009) in two of the other consolidated actions (the opposing plaintiffs) also oppose sealing, adding that if the settlement terms were known, the litigants in the other wrongful death cases would have a clear understanding as to the boundaries of the settlement, which would promote meaningful settlement discussions. Second, there are many more claims in this action than the other wrongful death cases and a limited pool of insurance. Good cause for sealing the settlement is not accomplished by concealing the amount of coverage removed from the pool of insurance of all other claimants. Indeed, defendants were advised of their ongoing *410 obligation under the CPLR to provide insurance information, and are obligated to inform other parties of the number of claims and amounts paid out on each claim. Under CPLR 3101 (h), defendants are obligated to supplement their responses when circumstances change as would occur when one case is settled.
To establish good cause, the likelihood of “significant and concrete harm” to the parties is the threshold consideration. The presumption against the sealing of court records remains as there is no showing that the confidentiality of the parties outweighs the public interest in the proceedings.
In response, East 51st Street argues that sealing is necessary to give effect to the parties’ confidential settlement. In negotiating the Bleidner settlement, confidentiality was a necessary condition to certain of the settling parties’ participation in the settlement. The settling parties insisted on confidentiality because public disclosure of the terms of the settlement would adversely affect and impede settlement negotiations with respect to the other wrongful death cases. New York courts seal settlement agreements where doing so furthers the public interest in encouraging the settlement of private actions. Disclosing the terms of the Bleidner settlement would give other plaintiffs an unfair negotiating advantage and would likely increase the cost, and decrease the likelihood of future settlements, which would thus increase the number of wrongful death cases that proceed to trial, contrary to the general public interest favoring settlements. Courts have also found that the interest in keeping settlement agreements confidential is especially strong where a defendant faces multiple related lawsuits.
To date, only Crave and the opposing plaintiffs filed any opposition to Bleidner’s application. Crave has not cited a single case supporting its position that it is “entitled” to know (i) “the participants in the Bleidner settlement,” (ii) “the amounts the parties . . . consider reasonable to pay in settlements,” (iii) “which defendants appear minded to settle the case,” and (iv) “which defendants appear prepared to go to trial and judgment.” Nor is there any legal basis for the position that parties are entitled to know what percentage of the settling parties’ available insurance coverage has been exhausted. While CPLR 3101 (f) permits a party to obtain discovery of “the existence and contents of’ insurance agreements, which, in large part, already have been provided, there is no similar disclosure device concerning the available limits of such policies. In any event, *411 the Bleidner settlement will not show how and by whom the settlement amount is being funded (i.e., the amounts paid by each individual insurer versus the percentage paid by each individual settling party).
The case cited by the opposing plaintiffs to suggest that a confidentiality order does not benefit the public interest is distinguishable because the confidentiality agreement in such case played only a minor role in securing the settlement. The broad confidentiality agreement in this action was an important factor in reaching settlement.
In opposition to East 51st Street,[3] the opposing plaintiffs argue that the issue of how much coverage exists in this case has not been clarified. The court has expressed its concern with whether there is adequate coverage to compensate the losses incurred in this tragic accident, and has set in motion a plan to see if the consolidated action can be “globally settled” through mediation. If defendants are unwilling to indicate how much coverage remains in order to settle the claims, the concept of a global settlement will not get off the ground. According to the opposing plaintiffs, East 51st Street indicates that somehow the Bleidner settlement was funded not merely through insurance but through personal assets of the settling party. These are items which if kept confidential will serve to hinder settlement rather than promote it. Disclosing the settlement amounts and terms would not discourage parties from entering future settlements. There are presently cases scheduled for damages trial, and if the parties knew the parameters used in reaching the Bleidner settlement, counsel could utilize the parameters in their own wrongful death cases to evaluate their case in light of Bleidner. Such knowledge would assist in settling the other death cases unless the parties to the Bleidner settlement somehow colluded to the detriment of the other nonsettling parties.
“Good cause” rests on a consideration of the interests of the public as well as the parties. The movants should submit the settlement agreement to the court for an in camera inspection to determine whether the claim that said agreement will inhibit future settlements is reasonable. Courts authorize sealing only in strictly limited circumstances and the parties have not offered any basis to justify sealing this settlement agreement.
In reply, East 51st Street adds that sealing would cause no prejudice to the other, nonsettling parties. Conversely, disclosing *412 the terms of the Bleidner settlement before all the wrongful death actions are resolved would decrease the likelihood of future settlements. This would increase the number of wrongful death cases that proceed to trial, which would undermine New York’s strong public policy favoring settlement of disputed claims. The terms of the Bleidner settlement should not be used to set “parameters” for any other settlement. The Bleidner settlement does not, and was not intended to, set “parameters” applicable to other wrongful death actions. Each case should be evaluated or settled based on its own facts and without regard to what happened with respect to the Bleidner settlement.
Disclosure of the Bleidner settlement will certainly make future settlements more difficult to achieve, and Crave and the opposing plaintiffs cannot dispute that New York public policy prefers that disputes be resolved through settlement rather than litigation. The contention that disclosure of the terms of the Bleidner settlement would promote a global settlement because “if the defendants are unwilling to advise the parties how much coverage remains in order to settle the claims, the concept of a global settlement will not get off the ground” is a red herring; the settlement contains no information regarding exhaustion of coverage. The opposing plaintiffs are really seeking to gain an unfair advantage in future settlement negotiations by knowing the exact amount of the Bleidner settlement and how much each settling party contributed to that settlement amount. Temporarily sealing the Bleidner settlement agreement will allow the parties to the remaining Labor Law actions to fairly and equitably negotiate additional settlements if the parties so desire.
Discussion
Before issuing an order temporarily sealing court records, the court must make an independent determination that the requirements of 22 NYCRR 216.1 (a) have been met. 22 NYCRR 216.1 (a) states, in relevant part, as follows:
“Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records . . . except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties” (emphasis added).
*413 The rationale for the rule has been articulated as follows:
“The rule reflects a long-standing recognition of the importance of allowing public access to court records in order to protect the general right of the public to have open court proceedings. In determining whether ‘good cause’ has been established for sealing records, a court must balance the public interest in disclosure in a particular case against the benefits to be derived by the parties from confidentiality.” (Matter of Hofmann, 188 Misc 2d 841, 846-847 [2001], affd 284 AD2d 92 [2001].)
The burden of proof falls on the party seeking to seal the records (Mosallem v Berenson, 76 AD3d 345, 349 [1st Dept 2010] [“the party seeking to seal court records has the burden to demonstrate compelling circumstances to justify restricting public access”]). In the context of sealing records, good cause
“ ‘generally signifies a sound basis or legitimate need to take judicial action.’ ‘Good cause’ as used in section 216.1 presupposes that compelling circumstances must be shown by the party seeking to have the records sealed. What it all boils down to, however, is the prudent exercise of the court’s discretion” (Coopersmith v Gold, 156 Misc 2d 594, 606 [Sup Ct, Rockland County 1992] [citations omitted], citing Matter of Crain Communications v Hughes, 135 AD2d 351 [1st Dept 1987]; Gryphon Dorn. VI, LLC v APP Intl. Fin. Co., B.V., 28 AD3d 322 [1st Dept 2006]).
It is uncontested that “there is a general public interest in disclosure of court records” (Matter of Twentieth Century Fox Film Corp., 190 AD2d 483, 486 [1st Dept 1993]). However, confidentiality may be “necessary in order to protect the litigants or encourage a fair resolution of the matter in controversy. As one commentator has noted, ‘Courts must have discretion to balance the competing interests of the parties, the public, and the justice systems. When the balance favors confidentiality, confidentiality should be provided’ ” (id., quoting Miller, The Private Costs of Public Justice, 63 NY St BJ 12, 13 [July/Aug. 1991]).
A somewhat analogous case, Matter of New York County Data Entry Worker Prod. Liab. Litig. (162 Misc 2d 263 [Sup Ct, NY County 1994], affd 222 AD2d 381 [1st Dept 1995]), is instructive, especially concerning the argument that ongoing insurance disclosure obligations militate against sealing. In New York *414 County Data Entry (a products liability case), plaintiffs and defendants A.B. Dick Company (A.B.) and Sony Corporation of America (Sony) settled plaintiffs’ claims, upon the condition that “each party would keep confidential the terms of the settlement agreements, including the consideration paid by the defendants” and obtained an order directing that the terms of the settlement between plaintiffs and A.B. remain confidential (162 Misc 2d at 264). Thereafter, when the nonsettling defendants sought to discover the terms of the settlement in order to “recalculate their maximum exposure should an unfavorable verdict be reached, or to determine whether they should settle rather than continue” the litigation (id. at 265), retired Justice Stephen Crane soundly reasoned:
“Although trial strategy is important to any party in litigation, defendants’ ‘need’ to obtain the settlement information arises not out of materiality or necessity but, rather, desirability. As much as defendants believe that obtaining this information now will better protect them at the time of trial, or assist them in assessing their risk of trial versus settlement, these are neither recognized nor accepted reasons for denying plaintiffs’ motion and disclosing the terms of the settlement agreements.” (Id.)
“The settlement of this case could not have been achieved without an agreement that the terms of the settlement, particularly the consideration paid, would not be revealed. Secrecy was deemed vital by all of the parties to the agreements. This secrecy induced changes of position by the parties relying on it. For the court to decline to support the parties in their reliance upon the agreements they have reached would work an injustice on these litigants and would inhibit future settlements.” (Id. at 268-269.)
The same rationale applies herein, and dispels the claim that information as to what insurance is left to answer a judgment is needed in order to make the determination whether or not to try the case. Whether a case should be settled or proceed to trial is “neither [a] recognized nor accepted reason[ ] for . . . disclosing the terms of [a] settlement agreementt ]” (id. at 265).
While the opposing plaintiffs and Crave, like the nonsettling defendants in New York County Data Entry seeking to learn the terms of a confidential settlement, “long to be let in on this se *415 cret” (id. at 264), the movants have demonstrated good cause for the sealing sought herein.
This consolidated litigation is complex and expensive, and discovery has been ongoing for the past two years and is expected to continue through next year, in light of the pending outstanding depositions of nearly 20 parties and the testing needed on multiple parts of the collapsed crane and related parts. This case has a serious need for the opportunity to achieve a negotiated resolution. The parties to this settled action have clearly expressed that confidentiality “was a necessary condition to certain of the settling parties’ participation in the settlement” (East 51st Street opp U 4).
“ ‘[I]f a defendant facing multiple plaintiffs seeks to settle a meritorious claim for a certain sum of money, it may be deterred from doing so if it knows that the terms of such a settlement would have to be made public . . . Many defendants would almost certainly proceed to trial rather than broadcast to all potential plaintiffs how much they might be willing to pay’ ” (New York County Data Entry, 162 Misc 2d at 268).
Thus, as confidentiality has been proved a critical component to settling this action, disclosure of the settlement terms, sum and allocation at this juncture could derail the instant Bleidner settlement, and would certainly have a chilling effect on the willingness of defendants to participate in settlement negotiations in the remaining consolidated actions. Such considerations outweigh the public access interest in open court proceedings, and the perceived need of the opposing plaintiffs and Crave to know the sum total of the funds available to them in order to settle or try their matters. The specifics of the settlement terms, i.e., the amounts paid by each settling defendant, by and large, are of minimal general public interest; and, when settling their claims, plaintiffs must do so based on the merits of their particular claims, and not based on “what money is available,” “what is left,” or “what someone else received”; indeed, damages should be based on “a sum of money that will justly and fairly compensate the plaintiff for all losses resulting from the injuries (he, she) sustained” (PJI 2:277). Future settlements in this consolidated action are expected to be based on a case-by-case assessment, and based on the particular facts of that case, and disclosure of the terms of the Bleidner settlement will introduce into the remaining wrongful death actions ad *416 ditional factors which should have no bearing on the amounts which each plaintiff is willing to accept to resolve his or her claim.[4] And, an in camera inspection of the settlement is therefore unnecessary.
It is noted that the movants seek a temporary sealing, until all wrongful death cases arising from the accident are resolved; thus, the Bleidner settlement will ultimately be accessible to the public. Such temporary nature of the sealing order is therefore narrowly tailored to serve the objectives of the settling parties.
This is not an instance where the proponents for sealing seek such relief merely to avoid embarrassment or damage to reputation, or claim a general desire for privacy (cf. Mosallem v Berenson, 76 AD3d 345, 351 [1st Dept 2010] [“neither the potential for embarrassment or damage to reputation, nor the general desire for privacy, constitutes good cause to seal court records”]). The Court in Mosallem declined to seal certain exhibits as “there [was] no evidence in the record as to why the documents are so confidential or sensitive that public access to them should be restricted” (id. at 350). Here, however, the movants have set forth a sufficient basis for sealing.
The strong public policy favoring settlement of claims, coupled with the good cause shown in maintaining the confidentiality of the settlement terms so as to avoid creating an artificial monetary threshold in future settlement negotiations, supports the sealing of the Bleidner settlement.
Conclusion
Based on the foregoing, it is hereby ordered that the order to show cause for an order temporarily sealing the settlement terms, sum and allocation of the estate of Wayne R Bleidner, deceased, including but not limited to death compromise that shall be submitted to the court, and directing that said documents shall be and remain sealed and confidential until all wrongful death cases arising from the same incident herein are resolved, pursuant to 22 NYCRR 216.1, is granted. And it is further ordered that the settling parties shall appear in part 35 on January 31, 2011, 10:00 a.m., to “So-Order” the Death Compromise Settlement; and it is further ordered that the Bleidner settlement be sealed and the Clerk shall deny access to the file *417 and records to anyone except for counsel of record to any of the settling parties, a settling party, and any representative of counsel of record to a settling party upon presentation to the Clerk of written authorization from said counsel.

. Plaintiff intends to file a motion pursuant to EPTL 5-4.6 after such sealing.

. Crave allegedly incurred approximately $2,300,000 in damages due to the total destruction of its business from the crane collapse.

. Crave declined the opportunity to respond to East 51st Street’s opposition papers which were submitted after Grave’s opposition.

. For example, in one matter, it is alleged that the decedent was alive when he hit the ground and died from suffocation from the debris, whereas in another matter, the decedent was allegedly dead before he hit the ground.